**Barrett S. DUFF, Appellant,**

v.

**UNION TEXAS PETROLEUM CORPORATION, Appellee.**

No. A14–88–034–CV

Court of Appeals of Texas, Houston (14th Dist.).

April 27, 1989.

James T. McCartt, Tracey Christopher, Houston, for appellant.

Mark E. Lowes, William K. Wilde, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This appeal arises from a judgment in a suit for breach of a joint venture agreement between Union Texas Petroleum (UTP) and Pluspetrol S.A. (an Argentine Company). Pluspetrol assigned their rights under this contract to Barrett S. Duff (Duff).

On November 26, 1980, UTP and Pluspetrol signed an agreement to submit a joint bid for an offshore oil and gas concession at an area known as Block D-1 (an area located offshore the Ivory Coast of Africa). The bid group included UTP, Pluspetrol, Rutherford Oil and Gas Corporation (Rutherford) and Fluor Oil and Gas Corporation (Fluor).[1]

---

1. The pertinent provisions of the agreement are as follows:

(2) The Parties hereto understand and agree that Union Texas shall have the primary responsibility concerning the timing and conduct of negotiations with Petroci for the award of Block D-1, including the conduct of negotiations for a PSC resulting from such an award. Pluspetrol shall have the right to fully participate in such negotiations regarding work commitments to Petroci for the award of Block D-1. It is understood, however, that upon request by Union Texas, Pluspetrol shall make best efforts to assist in the scheduling and facilitating of negotiations for the award of Block D-1.

(3) In the event that Block D-1 is awarded to Union Texas, Union Texas shall have the right to reserve (on behalf of itself, any successors and assigns) 85% of the total working interest initially awarded to Union Texas. The Union Texas share shall be defined to include any assignments made by Union Texas on its own volition to third parties. The remaining 15% of the total working interest shall be offered

In March 1981 a joint bid was filed on behalf of the UTP bid group as stated in the agreement. At the time the UTP bid group filed their bid, Agrip (an African owned oil company) joined the group. In July 1981 the Ivorian Government notified UTP that the oil and gas concession located at Block D–1 would be exclusively divided between UTP, Agrip, Total (a French owned oil company), and Petroci (the Ivory Coast government-owned oil company). The distribution of percentages of this oil and gas concession determined by the Ivory Coast Government:

| | |
|---|---|
| Agrip (Africa) Ltd. | 31.875% |
| Union Texas Petroleum | 31.875% |
| Total | 21.25% |
| Petroci | 15.0% (a carried interest) |

The Ivory Coast Minister of Mines, Paul Guidibo, explained the division of percentages because of their wishes not to have consortium partners participating with less than 15% interest. Thus, under the Minister's decision, Pluspetrol/Rutherford/Fluor were denied an interest in the oil and gas concession. Representatives of UTP and Pluspetrol attempted to get the Ivorian Government to approve transfers of interests between UTP and Pluspetrol. The Ivory Coast Government denied the requests.

A production sharing contract was entered into between the UTP, Agrip, Total, Petroci group and the Ivory Coast Government. Exploration commenced on Block D–1 and the two wells drilled were dry holes. Afterwards, the concession terminated and no further production or exploration took place.

Before any of the wells were completed Pluspetrol, Rutherford, and Fluor filed a lawsuit against UTP for breach of the joint bid agreement. Rutherford and Fluor settled with UTP. UTP counterclaimed against Duff for breach of the original agreement and the settlement agreement. After a trial to the bench, the trial court

to Fluor Oil and Gas Corporation ("Fluor") under the terms of paragraph 5 hereunder. (4) Pluspetrol, in its own behalf, or in conjunction with one equally participating party, shall have the right to acquire from the Union Texas share 10% of the total participating interest in Block D–1. Union Texas agrees to pay all expenses attributable to the Pluspetrol interest (hereinafter referred to as the "Pluspetrol Carried Interest") during the exploration period under the PSC covering Block D–1 until such time as two wells have been drilled and completed or abandoned. Thereafter, the Pluspetrol Carried Interest shall be converted into a full working interest and shall be liable for its pro rata share of all expenses due under the PSC and the joint operating agreement covering Block D–1. In the event that the Union Texas share is less than 85% of the total working interest in Block D–1, the Pluspetrol Carried Interest shall be reduced to the same proportion that 10 bears to 85. Except as provided for in paragraph No. 4 hereof, no Party shall have the right to voluntarily reduce by assignment its interest share in Block D–1 to less than 10% of the total interest in Block D–1.

(5) In the event that Union Texas is awarded Block D–1 under the terms of a PSC acceptable to Union Texas, Union Texas shall give written notification to Fluor at 1050 Colorado State Bank Building, Denver, Colorado 80202, (telex: 45–570) and shall notify Pluspetrol at the address first recited herein. Within a period of 15 days from said notification, Fluor shall have the right to acquire 15% of the total working interest in Block D–1 by notifying Union Texas in writing of its election to do so. Failure to so notify Union Texas shall be deemed a rejection by Fluor of its right to participate in Block D–1. In the event that Union Texas is initially awarded less than 100% of the total working interest in Block D–1, Fluor's reserved share shall be reduced to correspond to 15% of the Union Texas initial share. Notwithstanding the above, should Fluor fail to exercise its option to participate in Block D–1 as provided herein, Pluspetrol shall have an additional 15 days in which to elect in writing by notification to Union Texas that it desires to assume the Fluor reserved share. Fluor's exercise of its option hereunder shall be subject to the terms set forth in this agreement.

(6) In the event that Petroci elects to acquire under the terms of the PSC a working interest in Block D–1, said working interest shall be derived on a pro rata basis from the total interests held by all parties having rights in Block D–1.

(7) Following the award of Block D–1 to Union Texas, the Parties shall conclude a mutually acceptable operating agreement based upon a model to be provided by Union Texas which shall, in addition to other matters, provide: (a) Union Texas shall have the right to be operator, and (b) that only working interest parties shall have the right to vote on work programs, budgets or other financial matters related thereto.

(8) Assignments under this agreement or under the PSC covering Block D–1 shall be subject to any required approvals of Petroci or the Government of the Ivory Coast.

entered a take nothing judgment against both parties. Duff raises four points of error and UTP raises four cross-points of error. We affirm the judgment of the trial court.

After a take nothing judgment against both parties was entered, the trial court made the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT:**

1. Union Texas Petroleum Corporation (UTP) did prevent Pluspetrol from fully participating in the negotiations with the Ivory Coast government for the award of Block D–1 and for the subsequent Production Sharing Contract (PSC), but that conduct did not constitute a material breach of the agreement between UTP and Pluspetrol, and factually caused Pluspetrol no damage or harm of any kind.

2. There was no act of state on the part of the Ivory Coast government that excused UTP's performance under the November 26, 1980, agreement with Pluspetrol.

3. Under the November 26, 1980, agreement with UTP, Pluspetrol was entitled to a 1.59375% interest (out of the total interest awarded in the PSC).

4. UTP failed to convey a 1.59375% interest to Pluspetrol.

5. Neither the Joint Venture Agreement, the PSC, nor the acts of the Ivorian government precluded Pluspetrol's acquisition of that interest from UTP.

6. The Pluspetrol 1.59375% interest was not marketable at all and had no preproduction market value. After the wells were drilled, that interest had no value of any kind.

7. The failure of UTP to convey Pluspetrol a 1.59375% interest caused no damage or harm whatsoever to Pluspetrol or Duff.

8. The acts of the Ivorian government did not preclude Duff's acquisition of an assignment of Pluspetrol's causes of action against UTP.

9. The letter of December 1984 did constitute an enforceable agreement to settle the claims in this lawsuit, but was breached by UTP in insisting that Duff was not entitled to the agreed interest, and was not breached by Duff.

CONCLUSIONS OF LAW:

1. Because the evidence affirmatively shows that Pluspetrol/Duff never suffered any damage or harm as a result of UTP's failure to perform certain obligations under the November 26, 1980, agreement, plaintiff should take nothing in his claims against UTP.

2. Because Duff's causes of action are for breaches that factually caused Duff and/or Pluspetrol no damage or harm, Duff should not recover his attorneys' fees from UTP.

3. Plaintiff should not recover even nominal damages.

4. UTP should take nothing in its counterclaim against Duff.

SIGNED November 17, 1987.

/s/ Ann Tyrrell Cochran
Judge Presiding

The findings of the trial court are entitled to the same effect on appeal as a verdict by a jury. The fact findings will not be disturbed if there is some evidence of probative force to support them. The evidence must be viewed in the light most favorable to the successful party and every legitimate inference made that is favorable to such party. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *Guajardo v. Neece*, 758 S.W.2d 696, 698 (Tex.App.—Fort Worth 1988, no writ); *First Nat'l Bank v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). In reviewing an assertion that the evidence is insufficient to support a finding of fact, we are required to consider all of the evidence in the case. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Guajardo*, 758 S.W.2d at 698.

Appellant's first and second points of error complain that the evidence is legally and factually insufficient to support the findings. Specifically, the first point of error contends that under the parties agreement, Pluspetrol was entitled to a 3.1875% rather than the 1.5937% interest found by the trial court. The second point of error states that the 1.5937% interest that UTP failed to convey had substantial market value whereas the trial court found that the interest had no market value and that Pluspetrol was not damaged by UTP's failure to convey the interest. Appellant's third point of error contends that the trial court erred in concluding that Pluspetrol suffered no damage from UTP's breach of contract. We will address appellant's second and third points of error before considering the first.

■ The trial court was presented with two different approaches to assess damages caused by UTP's failure to convey the 1.59375% carried interest. First, Duff attempted to link the value of the interest to the risk capital expended by UTP. Duff presented evidence that in December 1980 management authorized UTP to risk 14.875 million dollars for a bonus and initial exploration program. By taking 37.5% of 14.875 million, Duff calculated that his interest should be worth in excess of $396,000.00.

Secondly, Duff presented evidence that before drilling started, Block D–1 was an attractive investment opportunity to Conoco, a large oil company. In 1982 Conoco made an offer to purchase a large percentage (30%) of the oil and gas concession from the UTP/Agrip/Total bid group in excess of $800,000.00 for each 1% interest. No sale to Conoco was consummated.

Duff's own expert conceded that he could not find any comparable sales to evidence market value of Pluspetrol's interest in the concession at the pre-production stage. UTP offered testimony explaining that since Pluspetrol's interest was so small there was no market for an interest of this size. These experts claimed that major oil companies were interested in accumulating interest of at least 25% and smaller companies and individuals are not

in a position to risk their capital on this kind of speculative international offshore concession. Furthermore, UTP presented testimony to the effect that Pluspetrol's interest would have had value if offered for sale after production. However, since the breach occurred before production no market value existed.

We find that plaintiff has failed to establish his damages as a matter of law and that a question of fact existed which the court found against him. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex.1981). Duff was unable to provide any evidence of comparable sales to determine market value of his interest. The trial court was entitled to reject his evidence and as fact finder to conclude that Duff's interest had no value. *See Berry Contr., Inc. v. Coastal States Petrochemical Co.*, 635 S.W.2d 759, 761–62 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

Our holdings on points of error two and three are dispositive of point of error number one. We find evidence sufficient to support the finding that Pluspetrol's interest had no value. Therefore, a discussion on the amount of Pluspetrol's interest is not necessary. Appellant's point of error one is overruled.

■ Appellant's fourth point of error contends that the trial court erred in concluding that he may not recover even nominal damages, and that he may not recover costs and his attorneys' fees from UTP. As previously discussed in points of error two and three, we find evidence supports the trial court's finding Duff's interest had no value and that Duff suffered no damages due to UTP's breach of the joint bid agreement. This would include nominal damages. *See Gulf Coast Investment Corp. v. Rothman*, 506 S.W.2d 856, 857–58 (Tex.1974). In addition, appellant is not entitled to costs and fees because a take nothing judgment does not constitute him a successful party entitled to costs and fees. *Lovato v. Ranger Ins. Co.*, 597 S.W.2d 34, 37 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Thus, reversal is not warranted merely to allow appellant to recover nominal damages. *Traveler's Ins. Co. v. Em-*

*ployers Casualty Co.,* 380 S.W.2d 610, 614–15 (Tex.1964). Finally, the trial court has broad discretion in the award of costs to the parties of a lawsuit. TEX.R.CIV.P. 131; *Rubin v. Adams,* 368 S.W.2d 42, 45 (Tex.Civ.App.—Amarillo 1963, writ ref'd n.r.e.). We find no abuse of discretion in the instant case. *See Brook Mays Organ Co. v. Sondock,* 551 S.W.2d 160, 165 (Tex. Civ.App.—Beaumont 1977, writ ref'd n.r. e.). Appellant's fourth point of error is overruled.

■ Appellee has raised four cross-points regarding the take-nothing judgment entered by the trial court. A separate appeal has not been perfected by UTP. Recently, in *Agricultural Warehouse, Inc. v. Uvalle,* 759 S.W.2d 691, 696 (Tex.App.—Dallas 1988, no writ), and *Chapman Air Conditioning v. Franks,* 732 S.W.2d 737, 742 (Tex.App.—Dallas 1987, no writ) appellees cross-points were dismissed. The Dallas Court required appellee to perfect its own appeal before considering cross-points in an unlimited appeal. We decline to follow these decisions, and consider them to be contrary to the Texas Supreme Court holding in *Hernandez v. City of Forth Worth,* 617 S.W.2d 923 (Tex.1981). The language in *Hernandez* clearly states that:

> An appellee may use cross-points to bring forward complaints of some ruling or action of the trial court that the appellee alleges constituted error as to him (citation omitted). *It is not necessary to perfect two separate and distinct appeals, unless the judgment of the trial court is definitely severable, and appellant strictly limits the scope of his appeal to a severable issue.* 617 S.W.2d at 924 (emphasis added).

Since this case, as well as those decided by the Dallas Court of Appeals on this issue, is not a limited appeal or within the *Hernandez* exception, the absence of a separately perfected appeal does not prevent a court from considering appellee's cross-points. *See* Butler, *The Need to Perfect an Independent Appeal to Raise Cross-points,* II The Appellate Advocate 3 (State Bar Appellate Practice & Advocacy Section Report) (Winter 1989).

■ Appellee's first cross-point contends that as a matter of law, the trial court erred when it held that UTP had breached the November 26, 1980, Joint Venture Agreement because the Act of State Doctrine excused UTP's performance. Appellee maintains that when the Ivory Coast government excluded the Pluspetrol group and substituted in their place, the French oil company TOTAL, the Act of State Doctrine applied and excused their breach of the Joint Venture Agreement. We disagree.

The Act of State Doctrine is a judicially created doctrine of restraint. This theory created by the United States Supreme Court in *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897) and reaffirmed in *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) states that:

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory.... 376 U.S. at 416 [84 S.Ct. at 934].

We find that this doctrine is not applicable in the present case. Duff is not suing a foreign government nor is he challenging the validity of a foreign government's expropriation of his property. The facts of the instant case do not parallel those in which courts have previously invoked the Act of State doctrine. *See Banco Nacional de Cuba,* 376 U.S. at 398, 84 S.Ct. at 923; *Industrial Inv. Development v. Mitsui & Co. Ltd.,* 594 F.2d 48, 51 (5th Cir.1979); *Hunt v. Mobil Oil Corp.,* 410 F.Supp. 10, 21 (s.d. New York 1976); *Hunt v. Coastal States Gas Producing Co.,* 583 S.W.2d 322, 325 (Tex.) *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *United Mexican States v. Ashley,* 556 S.W.2d 784, 785–86 (Tex.1977); *Terrazas v. Holmes,* 115 Tex. 32, 275 S.W. 392 (1925). Mere involvement of a foreign government in a dispute does not automatically invoke the Act of State doctrine. *Airline Pil. Ass'n, etc. v. Taca Intern Airlines,* 748 F.2d 965, 969–70 (5th Cir.1984); *Compania De Gas*

*de Nuevo Laredo, S.A. v. Entex,* 686 F.2d 322, 325–26 (5th Cir.1982). We find since the Act of State doctrine is not applicable to the facts of the instant case, the evidence in the record supports the trial court's rejection of this doctrine and finding that UTP breached the Joint Venture Agreement. Appellee's cross-point one is overruled.

■ Appellee's second cross-point contends that it was against the great weight of the evidence for the trial court to find that UTP had breached the November 26, 1980, Joint Venture Agreement. Applying the proper standards of review, we find evidence which supports the trial court's finding that UTP breached the November 26, 1980, Joint Venture Agreement. Testimony does indicate that Pluspetrol was excluded from participating in the negotiations for Block D–1. In addition, some evidence shows that UTP did not permit Pluspetrol to acquire an interest in Block D–1. Thus, the trial court's finding that UTP breached the Joint Venture Agreement of November 26, 1980, with Pluspetrol will not be disturbed. *City of Clute,* 559 S.W.2d at 395; *Guajardo,* 758 S.W.2d at 698; *First Nat'l Bank,* 589 S.W.2d at 146. Appellee's cross-point number two is overruled.

Appellee's third cross-point claims that as a matter of law, the trial court erred in finding that UTP breached the December 23, 1982, settlement agreement made between the parties. UTP's fourth cross-point states that as a matter of law, the trial court erred in finding that Duff had not breached the December 23, 1982, settlement agreement made between the parties. On December 23, 1982, a tentative settlement agreement was reached between the parties of the lawsuit. The settlement included a percentage of interest as well as cost to be borne by Fluor, Duff, Rutherford and UTP. In June 1983 Fluor, Rutherford and UTP formally entered into a written settlement agreement. Duff refused to concur in the changes of the December 23, 1982 settlement agreement which were agreed to between Fluor, Rutherford, and UTP.

We find evidence in the record that supports the trial court's finding that the December 23, 1982 letter constituted an enforceable settlement agreement. Also, we find evidence in the record that supports the trial court's finding that UTP breached the December 23, 1982 settlement agreement. Thus, the trial court's findings will not be disturbed. *City of Clute,* 559 S.W. 2d at 395; *Guajardo,* 758 S.W.2d at 698; *First Nat'l Bank,* 589 S.W.2d at 146. Appellee's cross-points three and four are overruled.

The judgment of the trial court is affirmed.