Richard E. LEHMANN, Appellant,

v.

Carlton L. WIEGHAT, Appellee.

No. 14–94–00859–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 8, 1996.

Rehearing Overruled March 21, 1996.

Clifford J. Vacek, Houston, Jeffrey Lee Hoffman, Houston, for appellant.

Michael W. Cooper, Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

This is an appeal from a take-nothing judgment entered upon a jury verdict in favor of appellee, Carlton L. Wieghat, in a damage suit by appellant, Richard E. Lehmann. The lawsuit was a "bystander" claim by appellant for emotional distress suffered as a result of the negligence of appellee in shooting and seriously injuring his son in a hunting accident. Appellant brings eight points of error addressed to the jury's answers to the questions submitted by the court on "bystander" status and damages. We affirm.

The accident occurred on November 3, 1991, on a 250 acre farm owned by the Lehmann family in Austin County. The appellant, Richard Lehmann and his son, Darrin, age 22 years, had gone to the farm to hunt deer. Carlton Wieghat, appellee, was there also to hunt deer. Carlton and Darrin went out in Carlton's pick-up truck to hunt at about 3:30 p.m. Richard stayed at the camphouse on the farm. Darrin and Carlton split up and Darrin walked one way and Carlton drove his truck another. Darrin heard a shot, and thinking Carlton had shot his deer, walked towards an intersection to be picked up by Carlton. While standing there, waiting, Darrin was shot in his side by Carlton. Carlton testified that he thought it was a deer that he shot. Carlton found Darrin on the ground, bleeding but conscious, and put him in the bed of his truck. Carlton drove rapidly back to camp, honking his horn all the way.

Carlton stated that the accident occurred about a mile to a mile and a half from the camp-house and that it took "5 to 10" minutes to drive Darrin to the fence gate where he met Richard. Richard testified that he was about a half mile away when he heard the second shot. Darrin testified that the camp-house was "maybe a mile and a half" from the place where the accident happened. After Richard heard the second shot and the horn blowing he drove down to the gate on the main road and saw Carlton's truck approaching with only one person in it. When Carlton pulled up beside Richard, he said "I shot Darrin." Both men walked to the back of the truck and Richard then saw Darrin in the bed of the truck. Darrin appeared to be dead to both Carlton and Richard. Richard performed mouth-to-mouth resuscitation on Darrin as they drove to the hospital. Darrin was in the hospital ten days, but recovered completely.

Richard testified that he missed ten days from work to be with his son while he was in the hospital, that he lost fifteen pounds since the accident, no longer hunts as a result of what happened, and that he is depressed and cries about the accident. Richard, however, had no medical treatment for either the stress or depression he allegedly incurred as a result of the accident. There was no expert testimony at the trial concerning any of Richard's symptoms. Appellant's eight points of error address three questions submitted to the jury and their answers, as follow:

QUESTION NO. 1

Do you find from a preponderance of the evidence that Richard Lehmann was near the scene of the accident?

Answer: "No"

QUESTION NO. 2

Do you find from a preponderance of the evidence that Richard Lehmann had a sensory and contemporaneous perception of the occurrence in question?

Answer: "No"

QUESTION NO. 6

[Asks what sum of money would compensate appellant for his pain and suffering, mental anguish, and loss of earning capacity.]

Answer: [The jury answered "$–0–".]

▬ This case involves the rights of bystanders to recover emotional distress damages suffered as a result of witnessing a serious accident. In *Boyles v. Kerr*, 855 S.W.2d 593 (Tex.1993), the supreme court held that there was no general duty in Texas not to negligently inflict emotional distress, and that a claimant may recover mental anguish damages only in connection with defendant's breach of some other duty. The

court's holding does not affect the right of a bystander to recover emotional distress damages suffered as a result of witnessing a serious or fatal accident. In the *Boyles* case, the court set out three rules to qualify a plaintiff for a "bystander" action:

Texas has adopted the bystander rules originally promulgated by the California Supreme Court in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968):

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or presence of only a distant relationship. *Freeman v. City of Pasadena,* 744 S.W.2d 923 (Tex. 1988). See also *Reagan v. Vaughn,* 804 S.W.2d 463, 466–67 (Tex.1990). The policy concerns that require limiting the emotional distress cause of action in the direct victim case generally do not apply in the bystander case. Before a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim.

*Boyles,* 855 S.W.2d at 598.

In the instant case, Richard Lehmann was the biological father of Darrin Lehmann, the victim, who was shot and seriously wounded by appellee, Carlton Wieghat. The trial court submitted questions to the jury which made inquiries of Appellant's standing under Rule (1), nearness to the scene of the accident, and Rule (2) sensory and contemporaneous perception of the occurrence in question. The jury answered "no" to both questions. Question 3, asked if Richard and Darrin were closely related and the jury answered "yes." Question 4 asked if the negligence of Carlton Wieghat proximately caused the occurrence and they answered "yes." Question 5 asked if the negligence was "gross negligence" and they

answered "no" and to the damage question, they found zero damages. Appellant's points of error numbers one and four claim error in submitting questions 1 and 2 because there was no factual dispute concerning Richard's nearness to the accident and his "sensory and contemporaneous perception" of it. Points of error two, three, five, and six, claim legal and factual insufficiency of evidence to support the jury's answers to questions 1 and 2.

A fact issue is established as a matter of law only when the evidence is undisputed and reasonable minds can arrive at but one conclusion. *Southwest Wheel & Mfg Co. v. Sholts,* 501 S.W.2d 387 (Tex.App.—Beaumont 1973, writ ref'd n.r.e). All parties are entitled to have controlling issues, raised by the pleadings and evidence, submitted to the jury. *Brown v. Goldstein,* 685 S.W.2d 640 (Tex.1985). A controlling issue is one which requires a factual determination to render judgment in the case. *Employers Casualty v. Block,* 744 S.W.2d 940, 944 (Tex.1988) (opinion on reh'g). The issue must also be disputed. *Id. See also, Collins v. Beste,* 840 S.W.2d 788 (Tex.App.—Fort Worth 1992, writ denied).

Appellant Lehmann argues that the court erred in submitting questions 1 and 2 because there was no factual dispute concerning the location of the parties and the victim at the time of the accident and that, as a matter of law, the facts show he "was brought so close to the reality of the accident as to render his experience an integral part of it," citing *City of Austin v. Davis,* 693 S.W.2d 31 (Tex.App.—Austin 1985, writ ref'd n.r.e). In that case, which was an appeal from a bench trial with stipulated evidence as to damages, a father found his son at the base of an airshaft after a three hour search for him in the hospital. No one *told* the father about the accident, and he discovered his son as a result of his own search. The court found that Davis "experienced sufficient perception of the incident to satisfy the requirements of the 'bystander doctrine.'" *Id.* at 34.

Appellant cites three other cases in support of his argument: (1) *General Motors*

*Corp. v. Grizzle,* 642 S.W.2d 837 (Tex.App.—Waco 1982, writ dism'd, w.o.j.); (2) *Bedgood v. Madalin,* 589 S.W.2d 797 (Tex.Civ.App.—Dallas 1979) *affirmed in part, rev'd on other grounds,* 600 S.W.2d 773 (Tex.1980); and (3) *Landreth v. Reed,* 570 S.W.2d 486 (Tex. App.—Texarkana 1978, no writ).

In *Grizzle,* a mother came upon the accident scene well after the accident occurred. No one *told* her about it. The court found that "Jane Grizzle was brought so close to the reality of the accident as to render her experience an integral part of it." 642 S.W.2d at 844. In *Landreth v. Reed,* a sister was present in a nursery when her younger sister drowned in a swimming pool, and the evidence was uncertain as to whether she saw the victim in the pool. She was present when the victim was brought from the pool and was present for some time while "mouth to mouth" and "arm lift" procedures were used in an effort to resuscitate the victim. The court held "the jury could have inferred from other evidence that only a few minutes elapsed between Kecia's entry into the pool and her discovery and resulting resuscitative efforts. In the modern view, actual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a *learning of it from others after its occurrence.*" 570 S.W.2d at 490.

In *Bedgood v. Madalin,* the father of the victim was about 100 feet from the place where his son was struck by an automobile when the father heard the impact and heard a loud scream by his son. A few seconds later he heard a loud thud "like a watermelon being dropped from a great height." The father went to his son in "less than a minute" to find his son unconscious and bleeding. 589 S.W.2d at 802–03. No one *told* him about the accident. In all of these cases, no one *told* the plaintiff of the accident after its occurrence.

In the instant case, the evidence shows that Richard was at the camp-house when the shot was fired and that he did not know if the second shot was in fact the shot that hit Darrin. The evidence was that Richard was about a half mile to a mile and a half away when Darrin was shot. When Carlton came up beside Richard in his pick-up truck "5 to 10" minutes after the accident, he immediately told appellant, "I shot Darrin." Immediately after he told Richard this, they both went to the back of the truck and appellant observed his son lying in the bed of the truck apparently unconscious. We find that the facts in this case were disputed about appellant's being "near" to the accident scene and the court did not err in submitting Question 1 to the jury as a disputed fact question. We find that reasonable minds could differ as to whether appellant was "near" the scene of the accident and a jury issue was proper. We overrule appellant's first point of error.

Likewise, we find that reasonable minds could differ whether appellant had a "sensory and contemporaneous perception" of the occurrence asked in Question 2, and that the court did not err in submitting this question to the jury as a disputed fact question. The facts were controverted as to how far appellant was from the scene when his son was shot, whether he actually "perceived" his son being shot when he heard the noise of Carlton's second shot, and the time interval between the time Darrin was shot and the time appellant first saw his son in the truck. Also, the facts were disputed as to Richard having had a "sensory and contemporaneous perception" of the accident as contrasted with learning of the accident from others after its occurrence. We overrule appellant's fourth point of error.

▮▮▮ Points of error two, three, five, six, seven, and eight address the legal and factual sufficiency of the evidence to support the jury's answers to questions 1, 2, and 6. When both legal and factual sufficiency points are raised, we are to rule on the no evidence point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing a claim of legally insufficient evidence, the appellate court must consider only the evidence and inferences that tend to support the verdict, and disregard all evidence and inferences to the contrary. *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992); *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174, 175 (Tex.1988). The jury findings must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v.*

*Georgetown Sav. & Loan Ass'n,* 595 S.W.2d 486, 488 (Tex.1979). There is more than a scintilla when the evidence creates more than a mere surmise or suspicion of its existence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). If the appellate court finds any evidence of probative force to support the verdict, the no evidence challenge must fail. If the appellate court finds some evidence to support the verdict, the court will then review the claim of factually insufficient evidence. *International Piping Sys. Ltd. v. M.M. White & Assoc., Inc.,* 831 S.W.2d 444, 447 (Tex.App.—Houston [14th Dist.] 1992, writ denied). In reviewing a factual insufficiency challenge, the appellate court must consider all of the evidence in the record, both in support of and contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). After considering and weighing all the evidence, the court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The appellate court is not a factfinder, and may not substitute its judgment for that of the jury, even if a different answer could be reached on the evidence. *St. Paul Medical Ctr. v. Cecil,* 842 S.W.2d 808, 813 (Tex.App.— Dallas 1992, no writ).

■ The evidence shows that Richard was a half mile to a mile and a half away when Darrin was shot; that he heard a shot, but did not know at the time that Darrin was shot; that after the shot, five to ten minutes elapsed before Carlton drove up to the fence gate, honking his horn, and Richard observed Darrin in the truck bed after Carlton told him, "I shot Darrin." The evidence clearly shows that Richard did not "contemporaneously perceive" the accident or otherwise experience the shock of unwittingly coming upon the accident scene. Also, the evidence justifies the jury finding that Richard was not located "near" the scene of the accident as contrasted with one who was a distance away from it. In these circumstances, we find that Richard Lehmann was not a "bystander" under the rules set out in *Freeman v. City of Pasadena,* 744 S.W.2d at 923–24, and the evidence is legally and factually sufficient to support the jury's answers to questions 1 and 2. We overrule appellant's points of error two, three, five and six.

Points of error seven and eight address the legal and factual sufficiency of the evidence to support the jury's negative answer to the damages issue. The jury found zero damages for pain and suffering, mental anguish, and loss of earning capacity.

■ A finding of zero damages, even if contrary to the uncontroverted evidence, is rendered immaterial by a finding of no liability. *Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334, 335 (1939); *Ramsey v. Lucky Stores, Inc.,* 853 S.W.2d 623 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ Appellant argues that where there is uncontroverted evidence of injury, the jury must award something for the elements of damages resulting from the injuries. He cites five cases in support of his argument: (1) *Hammett v. Zimmerman,* 804 S.W.2d 663 (Tex.App.—Fort Worth 1991, no writ), (2) *Cornelison v. Aggregate Haulers, Inc.,* 777 S.W.2d 542 (Tex.App.—Fort Worth 1989, writ denied), (3) *Russell v. Hankerson,* 771 S.W.2d 650 (Tex.App.—Corpus Christi 1989, writ denied), (4) *Robinson v. Minick,* 755 S.W.2d 890 (Tex.App.—Houston [1st Dist.] 1988, writ denied), and (5) *Porter v. General Telephone Co.,* 736 S.W.2d 204 (Tex.App.— Corpus Christi 1987, no writ). In all of these cases, a jury found liability on the part of the defendant and there were medical expenses incurred by the plaintiffs and objective findings of actual injury. In these cases, the jury found no damages for pain and suffering or mental anguish and all were reversed for new trial because the jury's findings were against the great weight and preponderance of the evidence. In this case, the evidence of appellant's injuries was purely subjective in that it consisted of his testimony about being depressed, losing weight, loss of sleep, and crying when he thinks of the accident. He had no medical treatment or medical expense for any of these symptoms.

There are cases that uphold jury findings of no damages for pain and suffering, despite other findings and evidence of injury and

damages, *McGuffin v. Terrell*, 732 S.W.2d 425, 427–28 (Tex.App.—Fort Worth 1987, no writ); *Sibert v. Enriquez*, 774 S.W.2d 812, 814 (Tex.App.—El Paso 1989, writ denied); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex.App.—Dallas 1988, no writ).

In an attempt to distinguish the two line of cases, the Dallas Court of Appeals in *Blizzard* stated:

> These cases perhaps indicate that appellate courts are more reluctant to hold jury findings of no damage for pain and suffering contrary to the great weight and preponderance of the evidence when the indicia of injury and damages are more *subjective* than *objective*. The more evidence of outward signs of pain, the less findings of damages depend upon the claimant's own feelings and complaints, the more likely appellate courts are to overturn jury findings of no damages for pain and suffering. *See also Hyler v. Boytor*, 823 S.W.2d 425 (Tex.App.—Houston [1st Dist.] 1992, no writ). (emphasis added).

*Blizzard*, 756 S.W.2d at 805.

Appellant also argues that the zero damage finding indicates bias and prejudice on the part of the jury rendering the trial fundamentally unfair. We disagree.

█ The general rule is that a finding of the jury is entitled to great deference by the appellate court unless the record reflects that the jury is motivated by passion, prejudice or something other than conscientious conviction. *Sibert v. Enriquez*, 774 S.W.2d 812, 814 (Tex.App.—El Paso 1989, writ denied). A jury finding cannot be set aside on appeal merely because this court would have weighed the evidence differently or reached another conclusion, but only if it is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988).

█ In all cases cited by appellant, the jury found both liability on the part of the defendant and *objective* injuries. In this case, the jury found no liability when it determined Lehmann was not a bystander and

notwithstanding their finding that Carlton was negligent in shooting Darrin. A finding of zero damages does not indicate bias or improper motive when the jury absolves the defendant of any fault. *Short v. Black & Decker, Inc.* 728 S.W.2d 832, 841–42 (Tex.App.—Beaumont 1987, no writ); *Johnson v. Whitehurst*, 652 S.W.2d 441, 449 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). When the evidence is sufficient to support the jury's finding of no liability, there is no presumption that a finding of zero damages was the result of prejudice or improper influence. *Southern Pine*, 124 S.W.2d at 335; *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d at 635.

We find the evidence legally and factually sufficient to support the jury verdict and overrule appellant's points of error seven and eight.

The judgment of the trial court is affirmed.