Randall CROW, Appellant,

v.

Gilbert BURNETT and Greg William
Burnett, Appellees.

No. 10–96–113–CV.

Court of Appeals of Texas,
Waco.

Aug. 20, 1997.

Emil Lippe, Jr., Law Offices of Lippe &
Ass'n, Dallas, for appellant.

Charles M. Bradshaw, Dallas, for appellee.

Before DAVIS, C.J., and CUMMINGS and
VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Appellant Randall Crow filed suit against
Appellee Greg William Burnett for damages
allegedly sustained by Crow as a result of a

collision between their cars.[1] Based on the questions submitted in the court's charge, the jury found that:

- Burnett's negligence proximately caused the collision;

- one hundred percent of the negligence which caused the collision is attributable to Burnett;

- Crow sustained no damages as a result of the collision; and

- Burnett was not grossly negligent.

In accordance with the verdict, the court rendered judgment that Crow take nothing from Burnett and that court costs be taxed against Crow.

Crow brings this appeal asserting in six points that neither legally nor factually sufficient evidence exists to support the jury's findings that Crow sustained no damages and that Burnett was not grossly negligent. Crow's seventh point claims that the court erred in taxing court costs against him. We will affirm the judgment.

## FACTUAL BACKGROUND

The facts surrounding the collision are not disputed. Crow was driving his automobile northbound on Interstate Highway 45 when he was overtaken by Burnett. Due to inattention and excessive speed on Burnett's part, he came upon Crow's car so suddenly that he had to take evasive action to avoid colliding with the rear end of Crow's car. Because another vehicle occupied the adjoining northbound lane, Burnett swerved onto the improved shoulder to avoid a collision.

Burnett immediately noticed the improved shoulder was about to end because of a bridge. To avoid colliding with the bridge, Burnett swerved back into Crow's lane. As a result, the passenger side of Crow's car scraped against the left rear corner of Burnett's. Crow alleges that as a result of the collision he suffered injuries to his back and his left knee.

The record reflects that Crow had previously suffered injuries to his lower back and to his left knee. Ten years before the collision, Crow had two arthroscopic surgeries performed on his left knee. Four years later, Crow injured his lower back. The injury required several days of hospitalization. Crow's physician discharged him with a diagnosis of an L5–S1 disc protrusion.

Eight months prior to the collision, Crow suffered a fracture to his left tibia which badly shattered the bone. Dr. Kurt Rathjen performed surgery to repair the fracture. Rathjen installed a six-inch metal plate and screws to hold the bone together as it healed. He advised Crow that further surgeries might be required to remove additional bone fragments. Subsequent x-rays revealed the presence of a bone fragment in the knee. As late as five months before the collision, Rathjen and Crow discussed the possibility of surgery to remove the fragment. At the time of the collision, Crow continued to wear an elastic brace on his left knee as a part of his therapy.

According to the evidence, the damage to Crow's car was minor. Crow testified that the collision caused "scratches and dents on the right front fender, fender well, door, the right rear fender well and quarter panel. All the way down." He recalled that as a result of the collision his left knee hit the window handle and the dash. Simultaneously, he swerved to the right to avoid hitting the car in the left lane of the interstate and "pulled [his] back."

Crow coasted about 150 feet to the end of the bridge before pulling over to the shoulder after the collision. He did not notice any injury at that time. Crow testified that he began to experience pain in his left knee and lower back later that evening. He described his symptoms as "some sharp pains" in the lower back, "numbness" in his legs, and his "knee was hurting quite a bit."

Crow testified that as a result of the collision his lower back has become "real tender";

**1.** Crow originally filed suit against Greg Burnett's father Gilbert. Greg Burnett was driving Gilbert's car when Greg collided with Crow. Crow subsequently filed an amended petition adding Greg Burnett as a defendant. The amended petition alleges Gilbert Burnett's liability solely on a theory of negligent entrustment. Crow non-suited Gilbert Burnett prior to trial. All references herein to "Burnett" are made to Greg William Burnett.

he experiences "tingling down [his legs]" if he sits or stands long; and his calf muscles contract and his toes curl. He described these symptoms as "very painful." Crow stated that as a result of the collision his knee has started "locking up[ ][a]nd then[ ] giving away mostly" as he walks.

At his mother's instance, he saw Dr. Kerry Donegan four days later. Donegan's records reflect that Crow initially complained of pain in the lower back and "down the posterior aspect of his thighs and calves." He informed Donegan that he began feeling the back pain about two hours after the collision and did not experience any leg pains until the next day. He denied "any numbness or tingling." Donegan assessed his injury as "[a]cute low back strain." X-rays revealed "perhaps some slight decrease in the L5–S1 disc space."

Ten days later, Crow returned for a follow-up examination. He complained on this visit of continued back pain and pain in his left knee. He informed the doctor also about the prior fracture. Donegan ordered x-rays which confirmed the fracture and revealed a probable tear of the medial meniscus and an apparent defect of the medial femoral condyle. A month later, Crow returned complaining only of lower back pain. Donegan's assessment again noted the observations made during the previous examination.

Crow had a follow-up examination four weeks later. He complained of continued back pain and "very occasional" leg pain. X-rays continued to depict "perhaps some slight decrease in the disc space at L5–S1." They also revealed "a loose body" in the left knee and osteophytes on Crow's medial and lateral femoral condyles. Donegan's assessment of back strain continued and he assessed the knee injury to be "post ACL and medial collateral ligament tear with loose body and post-traumatic arthritis."

Crow returned nine days later complaining of his lower back pain. Crow had two monthly follow-up examinations with Donegan after this. He complained of the lower back pain during these visits. Donegan diagnosed Crow to have a L5–S1 degenerative disc.

Crow changed physicians one month later. On his first visit to the new doctor, Dr. Ronnie Shade, Crow complained primarily of back pain, but he also stated that he had experienced "pain, popping and [the] sensation of the left knee 'giving way.'" Dr. Shade testified that Crow had a slight limp during this initial examination. The doctor also detected "tenderness and spasms in the lumbar region" and noted a limited range of motion of the back.

Shade confirmed the back strain diagnosis previously made by Donegan. He testified that his assessment of Crow included radiculitis of the lower back. He noted instability in Crow's left knee and a "suspected" meniscal tear in the left knee. Crow returned monthly to see Shade for follow-up care. Over the next six months, he continued to complain of lower back pain and of "persistent left knee pain, popping, and giving away."

One year after the collision, Shade operated on Crow's knee. The surgery revealed damage to the knee cartilage. Shade removed the metal plate and screws and some torn fragments of the anterior crucate ligament. The doctor also attempted to relieve some of the pressure Crow was experiencing from the damaged cartilage.

One and one-half years after this operation, Shade performed a second surgery to repair ligament damage suffered by Crow when he hyperextended his left knee. Crow testified that on this occasion, he was walking normally and his knee simply "[gave] out." In Crow's words, "It lock[ed] all the way out." On cross-examination, he explained that on this occasion he suffered this later injury as a result of planting his foot and twisting the knee.

Crow's medical bills totaled in excess of $40,000. Shade testified that in his opinion based on reasonable medical probability, the collision caused Crow's back and knee injuries. He testified that Crow continues to suffer "persistent back pain and ... pain and discomfort in the left knee and also with [sic] giving way of the left knee." In Shade's opinion, the collision exacerbated Crow's preexisting conditions.

On cross-examination, Shade explained that his opinion of causation is based solely on the information Crow provided him. The doctor conceded that Crow could possibly have experienced the knee problems he suffered as a result of the prior fracture and regardless of whether he had been in an accident. He agreed that removal of hardware like the metal plate implanted after Crow's fracture is generally recommended to avoid future pain and problems. Shade testified that the conditions he addressed in his first operation on Crow's knee could possibly have existed prior to the collision. He agreed that the damaged cartilage was not necessarily traumatic in origin.

Shade testified that low back pain is a common complaint and Crow's back pain was not necessarily a result of the accident. Burnett's counsel showed the doctor an MRI scan of Crow's back made a little more than two months after the collision. After reviewing the image, Shade explained that the MRI revealed degenerative disc disease in Crow's lumbar spine at L5–S1. The doctor stated that this type of condition usually does not manifest itself in such a short period of time. As a result, Shade agreed that it is "probably correct" that in all reasonable medical probability Crow's lower back condition antedated the collision.

### THE NO DAMAGES FINDING

Crow contends in his first point that the jury's finding of no damages is contrary to the great weight and preponderance of the evidence. His second point claims the evidence is insufficient to support this finding. He alleges in his third point that no evidence exists to support the finding.

■ When the party with the burden of proof appeals from an adverse finding, "the point of error should be that the matter was established as a matter of law, or that the jury's finding was against the great weight and preponderance of the evidence." *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *accord O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 113–14 (Tex.1976). However, the designation is not dispositive as we must review each allegation in the appropriate context. *See id.; Raw Hide Oil &*

*Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied).

In reviewing a no evidence point, we consider only the evidence and inferences which tend to support the contested issue and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). We must uphold the verdict if we find any probative evidence supporting the issue. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

A complaint that a finding is contrary to the great weight and preponderance of the evidence requires us to consider and weigh all the evidence. *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). We will set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson*, 692 S.W.2d at 457.

Crow argues that where uncontroverted evidence establishes injury and costs associated with the injury, the jury must award some amount of damages. He cites numerous authorities in support of this proposition. *See, e.g., Lowery v. Berry*, 153 Tex. 411, 269 S.W.2d 795 (1954); *Hammett v. Zimmerman*, 804 S.W.2d 663 (Tex.App.—Fort Worth 1991, no writ); *Russell v. Hankerson*, 771 S.W.2d 650 (Tex.App.—Corpus Christi 1989, writ denied); *Sansom v. Pizza Hut of East Tex., Inc.*, 617 S.W.2d 288 (Tex.Civ.App.—Tyler 1981, no writ); *Dupree v. Blackmon*, 481 S.W.2d 216 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.).

■ Each of the cases relied on by Crow involved findings of liability on the part of the defendants and objective evidence of injury sustained as a result of the respective defendants' conduct. In each case the jury's finding of no damages was reversed because it was contrary to the great weight and preponderance of the evidence.

This court and others have upheld jury findings of no damages notwithstanding findings of liability and evidence of injury and damages. *See Lance v. USAA Ins. Co.*, 934 S.W.2d 427, 429–30 (Tex.App.—Waco 1996,

no writ); *Lehmann v. Wieghat,* 917 S.W.2d 379, 385 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Hyler v. Boytor,* 823 S.W.2d 425, 427–28 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Sibert v. Enriquez,* 774 S.W.2d 812, 814 (Tex.App.—El Paso 1989, writ denied); *Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ); *McGuffin v. Terrell,* 732 S.W.2d 425, 427–28 (Tex.App.— Fort Worth 1987, no writ).

The Dallas court attempted to distinguish the two lines of cases stating:

> The cases perhaps indicate that appellate courts are more reluctant to hold jury findings of no damages for pain and suffering contrary to the great weight and preponderance of the evidence when the indicia of injury and damages are more subjective than objective. The more evidence of outward signs of pain, the less findings of damages depend upon the claimant's own feelings and complaints, the more likely appellate courts are to overturn jury findings of no damages for pain and suffering.

*Blizzard,* 756 S.W.2d at 805; *accord Lehmann,* 917 S.W.2d at 385; *Hyler,* 823 S.W.2d at 427–28.

Crow's medical bills exceeded $40,000. Shade provided the only expert testimony as to the extent of Crow's injuries and their cause. His opinion that the injuries were caused by the collision was based solely on the information Crow provided him. On cross-examination, Shade agreed that Crow's knee problems could have resulted from the prior fracture and regardless of whether he had been in the collision. He agreed that removal of the metal plate is generally recommended. He testified that the damage he sought to correct in his first operation on Crow's knee could possibly have existed prior to the collision. He agreed that the cartilage damage did not necessarily originate from some traumatic event.

Shade also testified that Crow's back pain did not necessarily result from the collision. He. agreed that the condition diagnosed for Crow's back does not ordinarily manifest itself in the short period of time in which Crow's did. As a result, Shade testified that Crow's lower back condition probably existed prior to the collision.

The jury had limited evidence of objective manifestations of Crow's alleged back and knee injuries. The x-rays ordered by Donegan on Crow's initial visit revealed a "slight decrease in the L5–S1 disc space." Later x-rays exhibited Crow's prior leg fracture and other damage to his knee. Shade observed that Crow "had a slight limp," "tenderness and spasms in [his lower back]," and limited range of motion in his back. As Shade explained however, these objective signs could be manifestations of Crow's prior condition just as well as they could be manifestations of injuries suffered as a result of the collision.

Shade's opinion of causation is based solely on the information Crow gave him. Based on Crow's prior history of knee and back injuries and based on Shade's testimony that the injuries he observed did not necessarily result from the collision but could have existed before, we find some probative evidence in the record to support the jury's finding that Crow suffered no damages as a result of Burnett's negligence. *Southern States Transp.,* 774 S.W.2d at 640. Thus, we cannot say that Crow established as a matter of law that his expenses were proximately caused by Burnett's negligence. *See Croucher,* 660 S.W.2d at 58. We overrule Crow's third point.

Because Crow had the burden of proof with respect to damages, his second point attacking the sufficiency of the evidence is really nothing more than a complaint that the jury's finding is contrary to the great weight and preponderance of the evidence. *Id.* Thus, we will consider his first point together with his second which alleges the finding is contrary to the great weight and preponderance of the evidence.

The only objective evidence that Crow's injuries resulted from the collision came from Donegan's medical records and Shade's testimony. However, Shade conceded on cross-examination that the injuries he observed could have possibly existed prior to the collision. Although Burnett offered no evidence of his own on this issue, his cross-examina-

tion of Shade provided the jury ample reasons to discount the doctor's original opinion of causation.

■ The jury is the sole judge of the witnesses' credibility and the weight to be accorded their testimony. *Woodlawn Mfg., Inc. v. Robinson*, 937 S.W.2d 544, 550 (Tex. App.—Texarkana 1996, writ denied). We do not sit as a thirteenth juror, and thus, we should not substitute our judgment for the jury's. *Mohnke v. Greenwood*, 915 S.W.2d 585, 589–90 (Tex.App.—Houston [14th Dist.] 1996, no writ). We cannot say that the jury's finding is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson*, 692 S.W.2d at 457. Thus, we overrule Crow's first and second points.

### GROSS NEGLIGENCE

Crow's fourth, fifth, and sixth points respectively aver that the jury's finding that Burnett was not grossly negligent is contrary to the great weight and preponderance of the evidence; that the evidence is insufficient to support this finding; and that no evidence exists to support the finding. Burnett counters that Crow has not properly preserved these contentions for our review.

■ In order to present a no evidence point on appeal, the appellant must have presented the contention to the trial court either:

(1) by motion for instructed verdict;
(2) by objecting to submission of the question;
(3) by motion for judgment notwithstanding the verdict;
(4) by motion to disregard the contested finding; or
(5) by motion for new trial.

*Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985); *accord Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). Crow took none of these steps to properly preserve his no evidence complaint for our review. Thus, we overrule his sixth point.

Rule 324(b)(2) and (3) of the Rules of Civil Procedure require a party to raise a complaint that the evidence is factually insufficient to support a finding or that the finding is contrary to the overwhelming weight of the evidence in a motion for new trial as a prerequisite to asserting the complaint on appeal. TEX.R. CIV. P. 324(b)(2), (3); *Cecil*, 804 S.W.2d at 510.

Crow raised neither of these points in his motion for new trial.[2] Thus, he failed to properly preserve them for our review. Accordingly, we overrule his fourth and fifth points.

### COURT COSTS

Crow's seventh point claims that the court erred in taxing costs against him because the jury found Burnett to be negligent as alleged. Burnett responds that because the jury awarded no damages, Crow cannot be considered the successful party. Thus, the court properly taxed costs against him.

■ Rule 131 of the Rules of Civil Procedure provides that the "successful party" shall recover court costs from his opponent. TEX.R. CIV. P. 131. "A successful party is 'one who obtains a judgment of a competent court vindicating a claim of right, civil in nature.'" *Lovato v. Ranger Ins. Co.*, 597 S.W.2d 34, 37 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.) (quoting *Siepert v. Brewer*, 433 S.W.2d 773, 775 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.)).

■ A plaintiff is not a successful party if he obtains favorable findings on liability but not on damages. *See Duff v. Union Tex. Petroleum Corp.*, 770 S.W.2d 615, 619 (Tex. App.—Houston [14th Dist.] 1989, no writ); *Collerain v. City of Granbury*, 760 S.W.2d 364, 368 (Tex.App.—Fort Worth 1988, no writ); *Lovato*, 597 S.W.2d at 37.

The jury found Burnett negligent but also found that Crow suffered no damages as a result of Burnett's negligence. Therefore, the jury's verdict did not make Crow a "suc-

---

**2.** Crow's motion for new trial attacked the sufficiency of the evidence to support the no damages finding; alleged that the no damages finding is contrary to the great weight and preponderance of the evidence; and claimed that no evidence exists to support the finding. The motion makes no reference to the gross negligence finding.

cessful party." *Id.* Thus, we overrule Crow's seventh point.

We affirm the judgment.

VANCE, Justice, dissenting.

I dissent. *See Lance v. USAA Ins. Co.,* 934 S.W.2d 427, 431–33 (Tex.App.—Waco 1996, no writ) (Vance, J., dissenting). As was true in *Lance,* the injured party testified to pain arising shortly after the accident and that evidence is uncontroverted. Thus, the jury's failure to find any damages is contrary to the weight of the evidence. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

I would reverse the judgment and remand the cause for another trial.