TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00180-CV






Terry Michael Byrd, Individually and as next friend of Shawn Byrd, Appellant



v.



Paula Westerhof, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. C97-589C, HONORABLE JACK H. ROBISON, JUDGE PRESIDING







Appellant Terry Michael Byrd ("Michael"), individually and as next friend of Shawn
Byrd ("Shawn"), sued appellee Paula Westerhof for injuries sustained following an automobile
collision. A jury found Westerhof's negligence caused the collision and awarded Michael damages
in the amount of $8,956.87 for his past medical care and $2,000.00 for Shawn's past medical
care.(1) The trial court rendered judgment based on the jury's verdict; Michael filed a motion for
new trial, which the trial court denied. By five issues, Michael appeals the trial court's denial of
his motion, arguing that the court abused its discretion because (1) the jury's refusal to award
damages for his and Shawn's past physical pain, physical impairment, and past mental anguish is
against the great weight and preponderance of the evidence; (2) the jury's award of past medical
expenses for his and Shawn's injuries is inadequate and against the great weight and
preponderance of the evidence; and (3) the jury's refusal to award damages for his future physical
pain, mental anguish, and physical impairment is against the great weight and preponderance of
the evidence. We will affirm the trial court's judgment.


BACKGROUND

On September 2, 1995, Michael, Shawn, and Ray Garland, Michael's stepfather,
were in Michael's pickup truck, stopped at a red light at an intersection in New Braunfels, when
a vehicle driven by Westerhof collided with the back-end of the truck. The impact caused
Michael's truck to collide with the vehicle in front of him. According to the police report of the
collision and the testimony at trial, none of the individuals involved in the collision reported any
injury to the police, and no one was treated for an injury at that time.

On August 22, 1997, Michael filed a lawsuit against Westerhof seeking damages
for his injuries.(2) At trial, the evidence adduced by Michael consisted primarily of Michael's,
Shawn's, Garland's, and Michael's wife's testimony, along with the deposition testimony of Dr.
Joan Krajea-Radcliffe, who treated both Michael and Shawn, including exhibits of medical reports
and medical expense statements. Westerhof presented no controverting medical evidence other
than the cross-examination of Dr. Radcliffe. According to the evidence presented, Michael's
medical expenses totaled over $17,913.94 for his own injuries and $6,850.00 for treatment of
Shawn's injuries. Following a jury trial, the trial court signed a judgment awarding $8,956.87
for Michael's past medical care and $2,000.00 for Shawn's past medical care. No damages were
awarded for past pain and suffering, future pain and suffering, or future medical care for either
Michael or Shawn.


DISCUSSION

On appeal, Michael argues that the jury's failure to award damages for his and
Shawn's past physical pain, impairment, and mental anguish and for his future physical pain,
impairment, and mental anguish is so against the great weight and preponderance of the evidence
as to be manifestly unjust.(3) He also contends that the amount awarded for his and Shawn's past
medical expenses is inadequate and against the great weight and preponderance of the evidence.(4)


Standard of Review

A trial court has broad discretion in determining whether to grant a new trial.
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). We will not disturb the decision of
the trial court absent an abuse of that discretion. Id.

In considering a challenge that the verdict is against the great weight and
preponderance of the evidence, we must weigh all the evidence; we will set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). The jury's findings are entitled to great deference and will not be reversed unless the
record indicates the jury was influenced by passion, prejudice, improper motive, or something
other than conscientious conviction. Hyler v. Boytor, 823 S.W.2d 425, 427 (Tex. App.--Houston
[1st Dist.] 1992, no writ). A jury's failure to find a fact need not be supported by affirmative
evidence, but the jury cannot refuse to find a fact in the face of overwhelming evidence of the
existence of the fact. Russell v. Hankerson, 771 S.W.2d 650, 653 (Tex. App.--Corpus Christi
1989, writ denied). We are mindful that the jury must determine the credibility of the witnesses
and the weight to be given their testimony. Leyva v. Pacheco, 358 S.W.2d 547, 549 (Tex. 1962). 
The jury may believe one witness and disbelieve another and resolve inconsistencies in any
witness's testimony. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). We cannot
substitute our judgment for the jury's merely because we would have weighed the evidence
differently or reached another conclusion. Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646,
651 (Tex. 1988); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

The jury generally has great discretion in considering evidence on the issue of
damages. McGalliard, 722 S.W.2d at 697. When uncontroverted, objective evidence of an injury
is presented and the causation of the injury has been established, courts are more likely to overturn
jury findings of no damages for past physical pain and impairment. Morse v. Delgado, 975
S.W.2d 378, 381 (Tex. App.--Waco 1998, no pet.); Crow v. Burnett, 951 S.W.2d 894, 897 (Tex.
App.--Waco 1997, pet. denied); Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805
(Tex. App.--Dallas 1988, no writ); see also Russell, 771 S.W.2d at 652 n.1 (stating that this rule
applies only when causation of injury has been satisfactorily established). On the other hand, if
the indicia of injury are more subjective in nature than objective, appellate courts are generally
more reluctant to hold a jury finding of no damages contrary to the great weight and
preponderance of the evidence. See, e.g., Morse, 975 S.W.2d at 381; Crow, 951 S.W.2d at 898;
Blizzard, 756 S.W.2d at 805; Dupree v. Blackmon, 481 S.W.2d 216, 221 (Tex. Civ.
App.--Beaumont 1972, no writ).(5) Finally, uncontroverted, objective evidence of injury does not
always require mental anguish damages. Lamb v. Franklin, 976 S.W.2d 339, 341 (Tex.
App.--Amarillo 1998, no pet.).

When there is conflicting evidence about the severity of the injuries or about
whether the injuries were caused by the collision, the jury has the discretion to resolve the
conflicts, determine which version of the evidence to accept, and refuse to award damages. See,
e.g., Lamb, 976 S.W.2d at 342-43; Wagner v. Taylor, 867 S.W.2d 404, 405 (Tex.
App.--Texarkana 1993, no writ); Pilkington v. Kornell, 822 S.W.2d 223, 230 (Tex. App.--Dallas
1991, writ denied); McGuffin v. Terrell, 732 S.W.2d 425, 428 (Tex. App.--Fort Worth 1987, no
writ); Szmalec v. Madro, 650 S.W.2d 514, 517 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd
n.r.e.); Middleton v. Palmer, 601 S.W.2d 759, 765-66 (Tex. Civ. App.--Dallas 1980, writ ref'd
n.r.e.). Or the jury may determine that only part of the injuries were caused by the collision at
issue and award damages accordingly. See, e.g., Lamb, 976 S.W.2d at 342-43; Hogue v. Kroger
Store No. 107, 875 S.W.2d 477, 482 (Tex. App.--Houston [1st Dist.] 1994, writ denied);
Wagner, 867 S.W.2d at 405; Pilkington, 822 S.W.2d at 230. Indeed, courts have upheld jury
awards of zero damages when both subjective and objective evidence of injuries existed, so long
as the jury's verdict was not so against the great weight of the evidence as to be manifestly unjust. 
See, e.g., Srite v. Owens-Illinois, Inc., 870 S.W.2d 556, 563 (Tex. App.--Houston [1st Dist.]
1993), rev'd on other grounds, 897 S.W.2d 765 (Tex. 1995); Hyler, 823 S.W.2d at 427;
Pilkington, 822 S.W.2d at 230. Thus, juries have great discretion in determining damages for
personal injuries, and we must assess each case by its own particular set of facts. 

We begin our analysis by detailing the evidence relevant to the damages issues in
order to determine whether the jury's findings demonstrate bias or shock the conscience so as to
be manifestly unjust. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988); Cropper, 754
S.W.2d at 651.


Michael's Injuries

According to Michael's testimony, he did not experience any pain immediately after
the accident. However, later that evening, his neck and shoulders began to hurt and tighten. The
following week, he visited his family doctor who referred him to Dr. Radcliffe, an orthopedic
surgeon. Dr. Radcliffe testified by deposition that Michael complained of pain in his neck and
lower back during the initial visit. An examination of Michael by Dr. Radcliffe revealed pain and
spasm in the left side of his trapezius (upper shoulder muscle), lower back irritation, tenderness
on the right side of his sacroiliac joint (the back in relation to the pelvis), and irritation to his right
leg when raised. Dr. Radcliffe's diagnosis was neck and low back strain with some sciatica (nerve
irritation from the lower back down the back of both legs) and sacroiliitis on the right side. She
prescribed pain and anti-inflammatory medication and recommended at least one month of physical
therapy.

Following his first session of physical therapy, Michael returned for a follow-up
appointment with Dr. Radcliffe on October 18, 1995. He reported that he was still experiencing
tenderness in the lower part of his neck. He also reported that he had irritated his neck and back
while working under his car about a week before. While underneath his car, Michael turned
abruptly to avoid being hit by a wrench that had fallen and experienced a shooting pain in his
neck. Dr. Radcliffe took x-rays of Michael's neck, which revealed a possible chip fracture in the
lower part of his neck. A subsequent CT scan, however, did not confirm the presence of a chip
fracture. Dr. Radcliffe recommended additional physical therapy. She testified that this incident
may have exacerbated the injuries Michael sustained from the collision.

Michael continued his physical therapy, which, according to his testimony, relieved
his lower back pain, but not his shoulder and neck pain. However, the discharge summary from
Michael's physical therapy clinic reflects that as of November 14, 1995, Michael experienced no
pain in his neck or lower back and that he was able to climb fifty-foot ladders four to five times
a day without any problem. About four months later, Michael visited a chiropractor, Dr. John
Hodges, in an effort to treat the pain Michael continued to experience in his neck and between his
shoulder blades. After various treatments, Michael reported that the pain persisted.

Dr. Radcliffe ordered an MRI (magnetic resonance imaging) to further investigate
the cause of Michael's pain; the MRI showed a posterior bulge and a degenerated disc. Based on
Dr. Radcliffe's advice, in March 1997, Michael consulted Dr. Randhir Sinha, a neurosurgeon who
treated Michael with more physical therapy, traction, and anti-inflammatory medication. After
months of physical therapy and no signs of improvement, Michael sought a second opinion from
Dr. Richard Westmark, another neurosurgeon, who diagnosed Michael with a disc herniation and
treated him with a series of three cervical steroid injections. The injections relieved the pain in
Michael's back, but the pain in his neck persisted.

In June 1999, Michael returned to Dr. Radcliffe, complaining of the persistent neck
pain. Dr. Radcliffe referred Michael to Dr. Elisabeth Schmalstieg, a neurologist, for nerve
conduction studies. Dr. Schmalsteig found a discrete sensory neuralgia on one side of Michael's
neck, which she attributed to the traction from the seatbelt shoulder harness during the collision. 
She prescribed a pain medication for Michael, which has helped in alleviating his neck pain. 
However, he testified that he continues to suffer from neck pain.

Michael argues that he presented objective evidence of injury through the deposition
testimony of Dr. Radcliffe and her review of other treating physicians' medical records. It is
within the jury's province to weigh opinion evidence and the judgment of experts. Pilkington, 822
S.W.2d at 230. Uncontradicted testimony of expert witnesses must be taken as true insofar as it
establishes facts, but opinions as to deductions from those facts are not binding on the jury. 
Gregory v. Texas Employers Ins. Ass'n, 530 S.W.2d 105, 107 (Tex. 1975). The testimony of an
expert on the issue of damages has only evidentiary significance. Novosad v. Mid-Century Ins.
Co., 881 S.W.2d 546, 550 (Tex. App.--San Antonio 1994, no writ).

Dr. Radcliffe testified that her initial examination of Michael revealed muscle
spasms and neck and low back strain with right sciatica and sacroiliitis. The neck and back strain
and the nerve irritation may be characterized as subjective rather than objective in nature, as Dr.
Radcliffe testified that an indication of recovery or improvement is if the patient is pain free. 
Thus, Dr. Radcliffe's findings depend upon the subjective complaints of Michael, and her
deductions are therefore not binding on the jury. Michael argues that muscle spasms, on the other
hand, are evident by "objective, visible symptoms, and if a person has muscle spasms, he has to
have pain."

This evidence of muscle spasms, however, must be weighed against any
controverting evidence presented by Westerhof. In this case, the jury was presented with evidence
that Michael's truck incurred only slight damage, costing less than $400 to repair; the collision
was a low-speed collision; and Michael did not miss any work as a result of his injuries.

Furthermore, through cross-examination, Westerhof presented testimony of pre-existing injuries. First, Michael admitted that as a foreman for a plumbing company, he engaged
in physically demanding labor and occasionally suffered sprains and similar injuries. And, on
March 26, 1994, while driving on a Houston beltway, Michael swerved to dodge debris that had
fallen from a bridge. Afterwards, Michael testified that he experienced severe pain in his upper
back. The pain was severe enough to awaken him at night.

Finally, the jury heard testimony bearing on Michael's credibility. In addition to
the statements recorded by Dr. Sinha suggesting that Michael may have been motivated by
secondary gain,(6) the jury also heard conflicting evidence regarding the need for surgery and the
existence and severity of Michael's pain. While Michael testified that he was advised that surgery
may be necessary, none of the medical reports support his statement. Moreover, the physical
therapy reports indicate that Michael was experiencing no pain when he was discharged from
physical therapy in November 1995. However, during the trial, Michael testified that his pain
never ceased. The jury need not believe an interested witness, such as Michael, even if no
controverting evidence is presented. See McGuffin, 732 S.W.2d at 428. Here, the jury was
presented with controverting evidence.

In support of his argument, Michael also directs us to the x-rays and Dr. Radcliffe's
assessment based on those x-rays of a small chip fracture on the left side of Michael's neck. 
However, the x-rays and Dr. Radcliffe's assessment are not uncontroverted, objective evidence
of an injury. A subsequent CT scan did not confirm Dr. Radcliffe's initial diagnosis of a chip
fracture. And although she testified that the CT scan could have simply failed to record the
fracture, her testimony did not conclusively establish that Michael was suffering from a chip
fracture and that the CT scan was inaccurate. In fact, Dr. Radcliffe testified that a CT scan is a
better device for detecting bone injuries than an x-ray.

Michael also relies on Dr. Radcliffe's assessment of MRIs taken of his back, in
which Dr. Radcliffe concluded that Michael is suffering from two mild posterior bulges.(8) She also
testified, however, that bulging discs could be caused by normal disc degeneration and are not
necessarily an indication of trauma. She further conceded that it is impossible to tell the true
source of the disc protrusion.

Dr. John Hodges, the chiropractor who treated Michael, reported finding
myospasms in Michael's neck and back and found his neck warm, swollen, and tender to palpatory
pressure. Michael's visit to Dr. Hodges, however, was subsequent to the incident in which
Michael injured his back while working on his car. Similarly, although Dr. Sinha reported
findings of muscle spasm and cervical spondylosis, he too examined Michael after he had injured
himself while working under his car. And Dr. Westmark's diagnosis of a disc herniation also
followed the car repair injury, as did Dr. Schmalstieg's finding of a discrete sensory neuralgia. 
In fact, Dr. Radcliffe testified that she did not find any nerve damage following her initial
examination of Michael after the collision, thus contradicting Dr. Schmalstieg's finding of a
discrete sensory neuralgia attributable to the accident. Consequently, the jury heard conflicting
evidence regarding whether Michael suffered injuries solely as a result of the collision.

Although not overwhelming, the record reflects that the jury was presented with
sufficient evidence to support its award of $8,956.87 for past medical expenses and of zero
damages for past and future pain, impairment, mental anguish, and future medical expenses. The
jury was presented with conflicting evidence regarding the severity of the injuries, past and future
pain, the cause of the injuries, and the need for future medical care. Moreover, the indicia of
injury were more subjective than objective in nature. After resolving the conflicts, the jury was
entitled to determine whether the collision was the cause or the sole cause for any or all of
Michael's injuries and to scrutinize the medical bills and determine which charges were reasonably
attributable to the collision. See Barrajas v. VIA Metro. Transit Auth., 945 S.W.2d 207, 209
(Tex. App.--San Antonio 1997, no writ). We are mindful that Michael failed to convince the jury
by a preponderance of the evidence of a fact essential to his recovery. See Lamb, 976 S.W.2d at
341; Pilkington, 822 S.W.2d at 225. A jury's failure to find a fact vital to recovery need not be
supported by affirmative evidence. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973);
Lamb, 976 S.W.2d at 343. It is not within the province of this Court to interfere with the jury's
resolution of conflicting evidence. Accordingly, we hold that the damages awarded Michael were
not so against the great weight and preponderance of the evidence as to be manifestly unjust.


Shawn's Injuries

Shawn testified that upon impact, he hit his head against the back window and
developed a knot on the back of his head. He did not report any injuries to the police officer
called to the scene, but he testified that he had a pounding headache all day long. The following
day, Shawn's back was stiff, his neck hurt, and the knot on his head was tender. Nine days later,
Shawn went to see Dr. Radcliffe. Dr. Radcliffe provided no testimony regarding Shawn's
injuries. However, her medical reports indicate that she found muscle spasms upon examining
Shawn. She referred Shawn to physical therapy. During his follow-up visit with Dr. Radcliffe,
Shawn was referred back to physical therapy. However, Shawn elected to follow the exercise
program he learned from physical therapy during his physical education classes at school instead. 

After Shawn continued to have headaches and back and neck pain four months after
the collision, Shawn went to see Dr. Hodges, the chiropractor who also examined Michael. 
Although Dr. Hodges did not testify at trial or through deposition, his reports were admitted into
evidence. Dr. Hodges's assessment of the x-rays taken of Shawn's back revealed a loss of normal
cervical curve in Shawn's neck. He also noted neurological deficits, myoneural deficiencies of
nerve roots, cervical hypomobility, and cervical hypermobility. Dr. Hodges treated Shawn for
two and a half months with traction, hot packs, therapeutic massages, diathermy, electrotherapy,
neuromuscular re-education, and adjustments.

Neither the medical records nor the police report indicates the existence of a knot
or hematoma on Shawn's head. Similarly, Shawn testified that he could not say with certainty that
the aches he experienced that precipitated his visit to Dr. Hodges were the result of the collision. 
He admitted that the aches could have been caused by other factors, such as sleeping in the wrong
position. Shawn also did not miss any work due to his injuries. Moreover, although Shawn
testified that he continued his physical therapy exercises at school, the jury was presented with
evidence that Shawn elected not to return to physical therapy after the first month. Thus, the jury
was presented with conflicting evidence regarding the cause and severity of Shawn's pain. And
even assuming that the jury believed the collision resulted in some injury to Shawn, the mere fact
of injury does not prove compensable pain and impairment. See Biggs v. GSC Enters., Inc., 8
S.W.3d 765, 769 (Tex. App.--Fort Worth 1999, no pet.); Blizzard, 756 S.W.2d at 805. The jury
could reasonably have believed that Shawn should be compensated for seeking medical care to
ensure his injuries were not serious, but that any pain or impairment that he may have suffered
was too minimal to warrant a monetary award. See Biggs, 8 S.W.3d at 769; Blizzard, 756 S.W.2d
at 805.

Guided by the axiom that we cannot substitute our opinion for that of the jury's
simply because we would have weighed the evidence differently, we have reviewed the entire
record and find nothing to indicate that the jury reached its decision based on anything other than
the evidence presented and "conscientious conviction." We cannot say that the jury's award of
$2000 for past medical expenses and the jury's failure to award damages for past pain and
impairment were against the great weight and preponderance of the evidence.


CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment and
its denial of the motion for new trial.





J. Woodfin Jones, Justice

Before Justices Kidd, Yeakel and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish












* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Because Shawn was a minor when he incurred his medical expenses, compensation for past
medical care was awarded to his father, Michael.
2. Initially, Michael sued Westerhof's mother, Kathy Shipler, for negligent entrustment. 
However, Shipler was subsequently non-suited, and the sole claim at trial was Michael's
negligence claim against Westerhof.
3. Shawn did not seek damages for future physical pain, impairment, or mental anguish.
4. We review complaints of improper or inadequate damage awards for sufficiency of the
evidence. See Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex. 1987) (applying legal and
factual sufficiency standards to review damage awards). Because Michael complains only that the
medical expenses awarded were against the great weight and preponderance of the evidence, we
will consider this issue together with his other damages complaints and examine the record
applying only a factual sufficiency standard.
5. Some courts have held that when there is uncontroverted, objective indicia of injury, a jury's
finding that the plaintiff suffered no past physical pain and impairment is against the great weight
and preponderance of the evidence. See, e.g., Lamb v. Franklin, 976 S.W.2d 339, 342 (Tex.
App.--Amarillo 1998, no pet.); Hammett v. Zimmerman, 804 S.W.2d 663, 664 (Tex. App.--Fort
Worth 1991, no writ) (citing Cornelison v. Aggregate Haulers, Inc., 777 S.W.2d 542, 548 (Tex.
App.--Fort Worth 1989, writ denied)). However, courts have been cautioned not to apply this
objective-subjective evidence of injury test too rigidly. Morse, 975 S.W.2d at 381 n.2 ("'Although
this formulation is a useful rule of thumb for determining whether a jury verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust, if rigidly applied, it
too threatens to frustrate application of Pool [v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986)].'")
(quoting Raul A. Gonzalez & Rob Gilbreath, Appellate Review of a Jury's Finding of "Zero
Damages," 54 Tex. B.J. 418, 420 (1991)). We agree with those courts that have applied the test
by considering all the evidence and determining whether the evidence supporting the jury's verdict
is so greatly outweighed by evidence to the contrary so as to be manifestly unjust. See, e.g., Crow
v. Burnett, 951 S.W.2d 894, 898 (Tex. App.--Waco 1997, pet. denied); Morse, 975 S.W.2d at
385-86; Hyler v. Boytor, 823 S.W.2d 425, 427-28 (Tex. App.--Houston [1st Dist.] 1992, no
writ); Pilkington v. Kornell, 822 S.W.2d 223, 230-31 (Tex. App.--Dallas 1991, writ denied);
Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805 (Tex. App.--Dallas 1988, no
writ); McGuffin v. Terrell, 732 S.W.2d 425, 428 (Tex. App.--Fort Worth 1987, no writ); Jackson
v. Killough, 615 S.W.2d 274, 275-76 (Tex. Civ. App.--Dallas 1981, no writ).
6. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain; that is, the statement
is consistent with an individual exaggerating symptoms because a lawsuit is pending.(7)
7. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain.
8. Dr. Radcliffe first testified that one of the posterior bulges was a small focal disc herniation. 
However, on cross-examination, she clarified that the herniation was more accurately
characterized as a minimal posterior bulge.


r wp="br1">



J. Woodfin Jones, Justice

Before Justices Kidd, Yeakel and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish












* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Because Shawn was a minor when he incurred his medical expenses, compensation for past
medical care was awarded to his father, Michael.
2. Initially, Michael sued Westerhof's mother, Kathy Shipler, for negligent entrustment. 
However, Shipler was subsequently non-suited, and the sole claim at trial was Michael's
negligence claim against Westerhof.
3. Shawn did not seek damages for future physical pain, impairment, or mental anguish.
4. We review complaints of improper or inadequate damage awards for sufficiency of the
evidence. See Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex. 1987) (applying legal and
factual sufficiency standards to review damage awards). Because Michael complains only that the
medical expenses awarded were against the great weight and preponderance of the evidence, we
will consider this issue together with his other damages complaints and examine the record
applying only a factual sufficiency standard.
5. Some courts have held that when there is uncontroverted, objective indicia of injury, a jury's
finding that the plaintiff suffered no past physical pain and impairment is against the great weight
and preponderance of the evidence. See, e.g., Lamb v. Franklin, 976 S.W.2d 339, 342 (Tex.
App.--Amarillo 1998, no pet.); Hammett v. Zimmerman, 804 S.W.2d 663, 664 (Tex. App.--Fort
Worth 1991, no writ) (citing Cornelison v. Aggregate Haulers, Inc., 777 S.W.2d 542, 548 (Tex.
App.--Fort Worth 1989, writ denied)). However, courts have been cautioned not to apply this
objective-subjective evidence of injury test too rigidly. Morse, 975 S.W.2d at 381 n.2 ("'Although
this formulation is a useful rule of thumb for determining whether a jury verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust, if rigidly applied, it
too threatens to frustrate application of Pool [v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986)].'")
(quoting Raul A. Gonzalez & Rob Gilbreath, Appellate Review of a Jury's Finding of "Zero
Damages," 54 Tex. B.J. 418, 420 (1991)). We agree with those courts that have applied the test
by considering all the evidence and determining whether the evidence supporting the jury's verdict
is so greatly outweighed by evidence to the contrary so as to be manifestly unjust. See, e.g., Crow
v. Burnett, 951 S.W.2d 894, 898 (Tex. App.--Waco 1997, pet. denied); Morse, 975 S.W.2d at
385-86; Hyler v. Boytor, 823 S.W.2d 425, 427-28 (Tex. App.--Houston [1st Dist.] 1992, no
writ); Pilkington v. Kornell, 822 S.W.2d 223, 230-31 (Tex. App.--Dallas 1991, writ denied);
Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805 (Tex. App.--Dallas 1988, no
writ); McGuffin v. Terrell, 732 S.W.2d 425, 428 (Tex. App.--Fort Worth 1987, no writ); Jackson
v. Killough, 615 S.W.2d 274, 275-76 (Tex. Civ. App.--Dallas 1981, no writ).
6. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain; that is, the statement
is consistent with an individual exaggerating symptoms because a lawsuit is pending.(7)
7. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain.
8. Dr. Radcliffe first testified that one of the posterior bulges was a small focal disc herniation. 
However, on cross-examination, she clarified that the herniation was more accurately
characterized as a minimal posterior bulge.

r tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain.
8. Dr. Radcliffe first testified that one of the posterior bulges was a small focal disc herniation. 
However, on cross-examination, she clarified that the herniation was more accurately
characterized as a minimal posterior bulge.

vidually and as next friend of Shawn Byrd, Appellant



v.



Paula Westerhof, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. C97-589C, HONORABLE JACK H. ROBISON, JUDGE PRESIDING







Appellant Terry Michael Byrd ("Michael"), individually and as next friend of Shawn
Byrd ("Shawn"), sued appellee Paula Westerhof for injuries sustained following an automobile
collision. A jury found Westerhof's negligence caused the collision and awarded Michael damages
in the amount of $8,956.87 for his past medical care and $2,000.00 for Shawn's past medical
care.(1) The trial court rendered judgment based on the jury's verdict; Michael filed a motion for
new trial, which the trial court denied. By five issues, Michael appeals the trial court's denial of
his motion, arguing that the court abused its discretion because (1) the jury's refusal to award
damages for his and Shawn's past physical pain, physical impairment, and past mental anguish is
against the great weight and preponderance of the evidence; (2) the jury's award of past medical
expenses for his and Shawn's injuries is inadequate and against the great weight and
preponderance of the evidence; and (3) the jury's refusal to award damages for his future physical
pain, mental anguish, and physical impairment is against the great weight and preponderance of
the evidence. We will affirm the trial court's judgment.


BACKGROUND

On September 2, 1995, Michael, Shawn, and Ray Garland, Michael's stepfather,
were in Michael's pickup truck, stopped at a red light at an intersection in New Braunfels, when
a vehicle driven by Westerhof collided with the back-end of the truck. The impact caused
Michael's truck to collide with the vehicle in front of him. According to the police report of the
collision and the testimony at trial, none of the individuals involved in the collision reported any
injury to the police, and no one was treated for an injury at that time.

On August 22, 1997, Michael filed a lawsuit against Westerhof seeking damages
for his injuries.(2) At trial, the evidence adduced by Michael consisted primarily of Michael's,
Shawn's, Garland's, and Michael's wife's testimony, along with the deposition testimony of Dr.
Joan Krajea-Radcliffe, who treated both Michael and Shawn, including exhibits of medical reports
and medical expense statements. Westerhof presented no controverting medical evidence other
than the cross-examination of Dr. Radcliffe. According to the evidence presented, Michael's
medical expenses totaled over $17,913.94 for his own injuries and $6,850.00 for treatment of
Shawn's injuries. Following a jury trial, the trial court signed a judgment awarding $8,956.87
for Michael's past medical care and $2,000.00 for Shawn's past medical care. No damages were
awarded for past pain and suffering, future pain and suffering, or future medical care for either
Michael or Shawn.


DISCUSSION

On appeal, Michael argues that the jury's failure to award damages for his and
Shawn's past physical pain, impairment, and mental anguish and for his future physical pain,
impairment, and mental anguish is so against the great weight and preponderance of the evidence
as to be manifestly unjust.(3) He also contends that the amount awarded for his and Shawn's past
medical expenses is inadequate and against the great weight and preponderance of the evidence.(4)


Standard of Review

A trial court has broad discretion in determining whether to grant a new trial.
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). We will not disturb the decision of
the trial court absent an abuse of that discretion. Id.

In considering a challenge that the verdict is against the great weight and
preponderance of the evidence, we must weigh all the evidence; we will set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). The jury's findings are entitled to great deference and will not be reversed unless the
record indicates the jury was influenced by passion, prejudice, improper motive, or something
other than conscientious conviction. Hyler v. Boytor, 823 S.W.2d 425, 427 (Tex. App.--Houston
[1st Dist.] 1992, no writ). A jury's failure to find a fact need not be supported by affirmative
evidence, but the jury cannot refuse to find a fact in the face of overwhelming evidence of the
existence of the fact. Russell v. Hankerson, 771 S.W.2d 650, 653 (Tex. App.--Corpus Christi
1989, writ denied). We are mindful that the jury must determine the credibility of the witnesses
and the weight to be given their testimony. Leyva v. Pacheco, 358 S.W.2d 547, 549 (Tex. 1962). 
The jury may believe one witness and disbelieve another and resolve inconsistencies in any
witness's testimony. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). We cannot
substitute our judgment for the jury's merely because we would have weighed the evidence
differently or reached another conclusion. Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646,
651 (Tex. 1988); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

The jury generally has great discretion in considering evidence on the issue of
damages. McGalliard, 722 S.W.2d at 697. When uncontroverted, objective evidence of an injury
is presented and the causation of the injury has been established, courts are more likely to overturn
jury findings of no damages for past physical pain and impairment. Morse v. Delgado, 975
S.W.2d 378, 381 (Tex. App.--Waco 1998, no pet.); Crow v. Burnett, 951 S.W.2d 894, 897 (Tex.
App.--Waco 1997, pet. denied); Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805
(Tex. App.--Dallas 1988, no writ); see also Russell, 771 S.W.2d at 652 n.1 (stating that this rule
applies only when causation of injury has been satisfactorily established). On the other hand, if
the indicia of injury are more subjective in nature than objective, appellate courts are generally
more reluctant to hold a jury finding of no damages contrary to the great weight and
preponderance of the evidence. See, e.g., Morse, 975 S.W.2d at 381; Crow, 951 S.W.2d at 898;
Blizzard, 756 S.W.2d at 805; Dupree v. Blackmon, 481 S.W.2d 216, 221 (Tex. Civ.
App.--Beaumont 1972, no writ).(5) Finally, uncontroverted, objective evidence of injury does not
always require mental anguish damages. Lamb v. Franklin, 976 S.W.2d 339, 341 (Tex.
App.--Amarillo 1998, no pet.).

When there is conflicting evidence about the severity of the injuries or about
whether the injuries were caused by the collision, the jury has the discretion to resolve the
conflicts, determine which version of the evidence to accept, and refuse to award damages. See,
e.g., Lamb, 976 S.W.2d at 342-43; Wagner v. Taylor, 867 S.W.2d 404, 405 (Tex.
App.--Texarkana 1993, no writ); Pilkington v. Kornell, 822 S.W.2d 223, 230 (Tex. App.--Dallas
1991, writ denied); McGuffin v. Terrell, 732 S.W.2d 425, 428 (Tex. App.--Fort Worth 1987, no
writ); Szmalec v. Madro, 650 S.W.2d 514, 517 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd
n.r.e.); Middleton v. Palmer, 601 S.W.2d 759, 765-66 (Tex. Civ. App.--Dallas 1980, writ ref'd
n.r.e.). Or the jury may determine that only part of the injuries were caused by the collision at
issue and award damages accordingly. See, e.g., Lamb, 976 S.W.2d at 342-43; Hogue v. Kroger
Store No. 107, 875 S.W.2d 477, 482 (Tex. App.--Houston [1st Dist.] 1994, writ denied);
Wagner, 867 S.W.2d at 405; Pilkington, 822 S.W.2d at 230. Indeed, courts have upheld jury
awards of zero damages when both subjective and objective evidence of injuries existed, so long
as the jury's verdict was not so against the great weight of the evidence as to be manifestly unjust. 
See, e.g., Srite v. Owens-Illinois, Inc., 870 S.W.2d 556, 563 (Tex. App.--Houston [1st Dist.]
1993), rev'd on other grounds, 897 S.W.2d 765 (Tex. 1995); Hyler, 823 S.W.2d at 427;
Pilkington, 822 S.W.2d at 230. Thus, juries have great discretion in determining damages for
personal injuries, and we must assess each case by its own particular set of facts. 

We begin our analysis by detailing the evidence relevant to the damages issues in
order to determine whether the jury's findings demonstrate bias or shock the conscience so as to
be manifestly unjust. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988); Cropper, 754
S.W.2d at 651.


Michael's Injuries

According to Michael's testimony, he did not experience any pain immediately after
the accident. However, later that evening, his neck and shoulders began to hurt and tighten. The
following week, he visited his family doctor who referred him to Dr. Radcliffe, an orthopedic
surgeon. Dr. Radcliffe testified by deposition that Michael complained of pain in his neck and
lower back during the initial visit. An examination of Michael by Dr. Radcliffe revealed pain and
spasm in the left side of his trapezius (upper shoulder muscle), lower back irritation, tenderness
on the right side of his sacroiliac joint (the back in relation to the pelvis), and irritation to his right
leg when raised. Dr. Radcliffe's diagnosis was neck and low back strain with some sciatica (nerve
irritation from the lower back down the back of both legs) and sacroiliitis on the right side. She
prescribed pain and anti-inflammatory medication and recommended at least one month of physical
therapy.

Following his first session of physical therapy, Michael returned for a follow-up
appointment with Dr. Radcliffe on October 18, 1995. He reported that he was still experiencing
tenderness in the lower part of his neck. He also reported that he had irritated his neck and back
while working under his car about a week before. While underneath his car, Michael turned
abruptly to avoid being hit by a wrench that had fallen and experienced a shooting pain in his
neck. Dr. Radcliffe took x-rays of Michael's neck, which revealed a possible chip fracture in the
lower part of his neck. A subsequent CT scan, however, did not confirm the presence of a chip
fracture. Dr. Radcliffe recommended additional physical therapy. She testified that this incident
may have exacerbated the injuries Michael sustained from the collision.

Michael continued his physical therapy, which, according to his testimony, relieved
his lower back pain, but not his shoulder and neck pain. However, the discharge summary from
Michael's physical therapy clinic reflects that as of November 14, 1995, Michael experienced no
pain in his neck or lower back and that he was able to climb fifty-foot ladders four to five times
a day without any problem. About four months later, Michael visited a chiropractor, Dr. John
Hodges, in an effort to treat the pain Michael continued to experience in his neck and between his
shoulder blades. After various treatments, Michael reported that the pain persisted.

Dr. Radcliffe ordered an MRI (magnetic resonance imaging) to further investigate
the cause of Michael's pain; the MRI showed a posterior bulge and a degenerated disc. Based on
Dr. Radcliffe's advice, in March 1997, Michael consulted Dr. Randhir Sinha, a neurosurgeon who
treated Michael with more physical therapy, traction, and anti-inflammatory medication. After
months of physical therapy and no signs of improvement, Michael sought a second opinion from
Dr. Richard Westmark, another neurosurgeon, who diagnosed Michael with a disc herniation and
treated him with a series of three cervical steroid injections. The injections relieved the pain in
Michael's back, but the pain in his neck persisted.

In June 1999, Michael returned to Dr. Radcliffe, complaining of the persistent neck
pain. Dr. Radcliffe referred Michael to Dr. Elisabeth Schmalstieg, a neurologist, for nerve
conduction studies. Dr. Schmalsteig found a discrete sensory neuralgia on one side of Michael's
neck, which she attributed to the traction from the seatbelt shoulder harness during the collision. 
She prescribed a pain medication for Michael, which has helped in alleviating his neck pain. 
However, he testified that he continues to suffer from neck pain.

Michael argues that he presented objective evidence of injury through the deposition
testimony of Dr. Radcliffe and her review of other treating physicians' medical records. It is
within the jury's province to weigh opinion evidence and the judgment of experts. Pilkington, 822
S.W.2d at 230. Uncontradicted testimony of expert witnesses must be taken as true insofar as it
establishes facts, but opinions as to deductions from those facts are not binding on the jury. 
Gregory v. Texas Employers Ins. Ass'n, 530 S.W.2d 105, 107 (Tex. 1975). The testimony of an
expert on the issue of damages has only evidentiary significance. Novosad v. Mid-Century Ins.
Co., 881 S.W.2d 546, 550 (Tex. App.--San Antonio 1994, no writ).

Dr. Radcliffe testified that her initial examination of Michael revealed muscle
spasms and neck and low back strain with right sciatica and sacroiliitis. The neck and back strain
and the nerve irritation may be characterized as subjective rather than objective in nature, as Dr.
Radcliffe testified that an indication of recovery or improvement is if the patient is pain free. 
Thus, Dr. Radcliffe's findings depend upon the subjective complaints of Michael, and her
deductions are therefore not binding on the jury. Michael argues that muscle spasms, on the other
hand, are evident by "objective, visible symptoms, and if a person has muscle spasms, he has to
have pain."

This evidence of muscle spasms, however, must be weighed against any
controverting evidence presented by Westerhof. In this case, the jury was presented with evidence
that Michael's truck incurred only slight damage, costing less than $400 to repair; the collision
was a low-speed collision; and Michael did not miss any work as a result of his injuries.

Furthermore, through cross-examination, Westerhof presented testimony of pre-existing injuries. First, Michael admitted that as a foreman for a plumbing company, he engaged
in physically demanding labor and occasionally suffered sprains and similar injuries. And, on
March 26, 1994, while driving on a Houston beltway, Michael swerved to dodge debris that had
fallen from a bridge. Afterwards, Michael testified that he experienced severe pain in his upper
back. The pain was severe enough to awaken him at night.

Finally, the jury heard testimony bearing on Michael's credibility. In addition to
the statements recorded by Dr. Sinha suggesting that Michael may have been motivated by
secondary gain,(6) the jury also heard conflicting evidence regarding the need for surgery and the
existence and severity of Michael's pain. While Michael testified that he was advised that surgery
may be necessary, none of the medical reports support his statement. Moreover, the physical
therapy reports indicate that Michael was experiencing no pain when he was discharged from
physical therapy in November 1995. However, during the trial, Michael testified that his pain
never ceased. The jury need not believe an interested witness, such as Michael, even if no
controverting evidence is presented. See McGuffin, 732 S.W.2d at 428. Here, the jury was
presented with controverting evidence.

In support of his argument, Michael also directs us to the x-rays and Dr. Radcliffe's
assessment based on those x-rays of a small chip fracture on the left side of Michael's neck. 
However, the x-rays and Dr. Radcliffe's assessment are not uncontroverted, objective evidence
of an injury. A subsequent CT scan did not confirm Dr. Radcliffe's initial diagnosis of a chip
fracture. And although she testified that the CT scan could have simply failed to record the
fracture, her testimony did not conclusively establish that Michael was suffering from a chip
fracture and that the CT scan was inaccurate. In fact, Dr. Radcliffe testified that a CT scan is a
better device for detecting bone injuries than an x-ray.

Michael also relies on Dr. Radcliffe's assessment of MRIs taken of his back, in
which Dr. Radcliffe concluded that Michael is suffering from two mild posterior bulges.(8) She also
testified, however, that bulging discs could be caused by normal disc degeneration and are not
necessarily an indication of trauma. She further conceded that it is impossible to tell the true
source of the disc protrusion.

Dr. John Hodges, the chiropractor who treated Michael, reported finding
myospasms in Michael's neck and back and found his neck warm, swollen, and tender to palpatory
pressure. Michael's visit to Dr. Hodges, however, was subsequent to the incident in which
Michael injured his back while working on his car. Similarly, although Dr. Sinha reported
findings of muscle spasm and cervical spondylosis, he too examined Michael after he had injured
himself while working under his car. And Dr. Westmark's diagnosis of a disc herniation also
followed the car repair injury, as did Dr. Schmalstieg's finding of a discrete sensory neuralgia. 
In fact, Dr. Radcliffe testified that she did not find any nerve damage following her initial
examination of Michael after the collision, thus contradicting Dr. Schmalstieg's finding of a
discrete sensory neuralgia attributable to the accident. Consequently, the jury heard conflicting
evidence regarding whether Michael suffered injuries solely as a result of the collision.

Although not overwhelming, the record reflects that the jury was presented with
sufficient evidence to support its award of $8,956.87 for past medical expenses and of zero
damages for past and future pain, impairment, mental anguish, and future medical expenses. The
jury was presented with conflicting evidence regarding the severity of the injuries, past and future
pain, the cause of the injuries, and the need for future medical care. Moreover, the indicia of
injury were more subjective than objective in nature. After resolving the conflicts, the jury was
entitled to determine whether the collision was the cause or the sole cause for any or all of
Michael's injuries and to scrutinize the medical bills and determine which charges were reasonably
attributable to the collision. See Barrajas v. VIA Metro. Transit Auth., 945 S.W.2d 207, 209
(Tex. App.--San Antonio 1997, no writ). We are mindful that Michael failed to convince the jury
by a preponderance of the evidence of a fact essential to his recovery. See Lamb, 976 S.W.2d at
341; Pilkington, 822 S.W.2d at 225. A jury's failure to find a fact vital to recovery need not be
supported by affirmative evidence. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973);
Lamb, 976 S.W.2d at 343. It is not within the province of this Court to interfere with the jury's
resolution of conflicting evidence. Accordingly, we hold that the damages awarded Michael were
not so against the great weight and preponderance of the evidence as to be manifestly unjust.


Shawn's Injuries

Shawn testified that upon impact, he hit his head against the back window and
developed a knot on the back of his head. He did not report any injuries to the police officer
called to the scene, but he testified that he had a pounding headache all day long. The following
day, Shawn's back was stiff, his neck hurt, and the knot on his head was tender. Nine days later,
Shawn went to see Dr. Radcliffe. Dr. Radcliffe provided no testimony regarding Shawn's
injuries. However, her medical reports indicate that she found muscle spasms upon examining
Shawn. She referred Shawn to physical therapy. During his follow-up visit with Dr. Radcliffe,
Shawn was referred back to physical therapy. However, Shawn elected to follow the exercise
program he learned from physical therapy during his physical education classes at school instead. 

After Shawn continued to have headaches and back and neck pain four months after
the collision, Shawn went to see Dr. Hodges, the chiropractor who also examined Michael. 
Although Dr. Hodges did not testify at trial or through deposition, his reports were admitted into
evidence. Dr. Hodges's assessment of the x-rays taken of Shawn's back revealed a loss of normal
cervical curve in Shawn's neck. He also noted neurological deficits, myoneural deficiencies of
nerve roots, cervical hypomobility, and cervical hypermobility. Dr. Hodges treated Shawn for
two and a half months with traction, hot packs, therapeutic massages, diathermy, electrotherapy,
neuromuscular re-education, and adjustments.

Neither the medical records nor the police report indicates the existence of a knot
or hematoma on Shawn's head. Similarly, Shawn testified that he could not say with certainty that
the aches he experienced that precipitated his visit to Dr. Hodges were the result of the collision. 
He admitted that the aches could have been caused by other factors, such as sleeping in the wrong
position. Shawn also did not miss any work due to his injuries. Moreover, although Shawn
testified that he continued his physical therapy exercises at school, the jury was presented with
evidence that Shawn elected not to return to physical therapy after the first month. Thus, the jury
was presented with conflicting evidence regarding the cause and severity of Shawn's pain. And
even assuming that the jury believed the collision resulted in some injury to Shawn, the mere fact
of injury does not prove compensable pain and impairment. See Biggs v. GSC Enters., Inc., 8
S.W.3d 765, 769 (Tex. App.--Fort Worth 1999, no pet.); Blizzard, 756 S.W.2d at 805. The jury
could reasonably have believed that Shawn should be compensated for seeking medical care to
ensure his injuries were not serious, but that any pain or impairment that he may have suffered
was too minimal to warrant a monetary award. See Biggs, 8 S.W.3d at 769; Blizzard, 756 S.W.2d
at 805.

Guided by the axiom that we cannot substitute our opinion for that of the jury's
simply because we would have weighed the evidence differently, we have reviewed the entire
record and find nothing to indicate that the jury reached its decision based on anything other than
the evidence presented and "conscientious conviction." We cannot say that the jury's award of
$2000 for past medical expenses and the jury's failure to award damages for past pain and
impairment were against the great weight and preponderance of the evidence.


CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment and
its denial of the motion for new trial.





J. Woodfin Jones, Justice

Before Justices Kidd, Yeakel and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish












* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Because Shawn was a minor when he incurred his medical expenses, compensation for past
medical care was awarded to his father, Michael.
2. Initially, Michael sued Westerhof's mother, Kathy Shipler, for negligent entrustment. 
However, Shipler was subsequently non-suited, and the sole claim at trial was Michael's
negligence claim against Westerhof.
3. Shawn did not seek damages for future physical pain, impairment, or mental anguish.
4. We review complaints of improper or inadequate damage awards for sufficiency of the
evidence. See Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex. 1987) (applying legal and
factual sufficiency standards to review damage awards). Because Michael complains only that the
medical expenses awarded were against the great weight and preponderance of the evidence, we
will consider this issue together with his other damages complaints and examine the record
applying only a factual sufficiency standard.
5. Some courts have held that when there is uncontroverted, objective indicia of injury, a jury's
finding that the plaintiff suffered no past physical pain and impairment is against the great weight
and preponderance of the evidence. See, e.g., Lamb v. Franklin, 976 S.W.2d 339, 342 (Tex.
App.--Amarillo 1998, no pet.); Hammett v. Zimmerman, 804 S.W.2d 663, 664 (Tex. App.--Fort
Worth 1991, no writ) (citing Cornelison v. Aggregate Haulers, Inc., 777 S.W.2d 542, 548 (Tex.
App.--Fort Worth 1989, writ denied)). However, courts have been cautioned not to apply this
objective-subjective evidence of injury test too rigidly. Morse, 975 S.W.2d at 381 n.2 ("'Although
this formulation is a useful rule of thumb for determining whether a jury verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust, if rigidly applied, it
too threatens to frustrate application of Pool [v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986)].'")
(quoting Raul A. Gonzalez & Rob Gilbreath, Appellate Review of a Jury's Finding of "Zero
Damages," 54 Tex. B.J. 418, 420 (1991)). We agree with those courts that have applied the test
by considering all the evidence and determining whether the evidence supporting the jury's verdict
is so greatly outweighed by evidence to the contrary so as to be manifestly unjust. See, e.g., Crow
v. Burnett, 951 S.W.2d 894, 898 (Tex. App.--Waco 1997, pet. denied); Morse, 975 S.W.2d at
385-86; Hyler v. Boytor, 823 S.W.2d 425, 427-28 (Tex. App.--Houston [1st Dist.] 1992, no
writ); Pilkington v. Kornell, 822 S.W.2d 223, 230-31 (Tex. App.--Dallas 1991, writ denied);
Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805 (Tex. App.--Dallas 1988, no
writ); McGuffin v. Terrell, 732 S.W.2d 425, 428 (Tex. App.--Fort Worth 1987, no writ); Jackson
v. Killough, 615 S.W.2d 274, 275-76 (Tex. Civ. App.--Dallas 1981, no writ).
6. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain; that is, the statement
is consistent with an individual exaggerating symptoms because a lawsuit is pending.(7)
7. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain.
8. Dr. Radcliffe first testified that one of the posterior bulges was a small focal disc herniation. 
However, on cross-examination, she clarified that the herniation was more accurately
characterized as a minimal posterior bulge.


r wp="br1">



J. Woodfin Jones, Justice

Before Justices Kidd, Yeakel and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish












* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Because Shawn was a minor when he incurred his medical expenses, compensation for past
medical care was awarded to his father, Michael.
2. Initially, Michael sued Westerhof's mother, Kathy Shipler, for negligent entrustment. 
However, Shipler was subsequently non-suited, and the sole claim at trial was Michael's
negligence claim against Westerhof.
3. Shawn did not seek damages for future physical pain, impairment, or mental anguish.
4. We review complaints of improper or inadequate damage awards for sufficiency of the
evidence. See Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex. 1987) (applying legal and
factual sufficiency standards to review damage awards). Because Michael complains only that the
medical expenses awarded were against the great weight and preponderance of the evidence, we
will consider this issue together with his other damages complaints and examine the record
applying only a factual sufficiency standard.
5. Some courts have held that when there is uncontroverted, objective indicia of injury, a jury's
finding that the plaintiff suffered no past physical pain and impairment is against the great weight
and preponderance of the evidence. See, e.g., Lamb v. Franklin, 976 S.W.2d 339, 342 (Tex.
App.--Amarillo 1998, no pet.); Hammett v. Zimmerman, 804 S.W.2d 663, 664 (Tex. App.--Fort
Worth 1991, no writ) (citing Cornelison v. Aggregate Haulers, Inc., 777 S.W.2d 542, 548 (Tex.
App.--Fort Worth 1989, writ denied)). However, courts have been cautioned not to apply this
objective-subjective evidence of injury test too rigidly. Morse, 975 S.W.2d at 381 n.2 ("'Although
this formulation is a useful rule of thumb for determining whether a jury verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust, if rigidly applied, it
too threatens to frustrate application of Pool [v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986)].'")
(quoting Raul A. Gonzalez & Rob Gilbreath, Appellate Review of a Jury's Finding of "Zero
Damages," 54 Tex. B.J. 418, 420 (1991)). We agree with those courts that have applied the test
by considering all the evidence and determining whether the evidence supporting the jury's verdict
is so greatly outweighed by evidence to the contrary so as to be manifestly unjust. See, e.g., Crow
v. Burnett, 951 S.W.2d 894, 898 (Tex. App.--Waco 1997, pet. denied); Morse, 975 S.W.2d at
385-86; Hyler v. Boytor, 823 S.W.2d 425, 427-28 (Tex. App.--Houston [1st Dist.] 1992, no
writ); Pilkington v. Kornell, 822 S.W.2d 223, 230-31 (Tex. App.--Dallas 1991, writ denied);
Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805 (Tex. App.--Dallas 1988, no
writ); McGuffin v. Terrell, 732 S.W.2d 425, 428 (Tex. App.--Fort Worth 1987, no writ); Jackson
v. Killough, 615 S.W.2d 274, 275-76 (Tex. Civ. App.--Dallas 1981, no writ).
6. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain; that is, the statement
is consistent with an individual exaggerating symptoms because a lawsuit is pending.(7)
7. Dr. Sinha's notes indicate that Michael made the statement, "[S]he needs to compensate me,
my lawyer tells me." On cross-examination, Dr. Radcliffe agreed that the statement could be
construed as an indication that the patient is motivated by secondary gain.
8. Dr. Radcliffe first testified that one of the posterior bulges was a small focal disc herniation. 
However, on cross-examination, she clarified that the herniation was more accurately
characterized as a minimal posterior bulge.

nclusion of its brief filed in this court, appellant places certain interpretations on the proceedings and reaches the conclusion that appellant did not receive the fair and impartial trial to which it was entitled. We think the apt response predated appellant's assertion *374 when, in 1861 the Supreme Court of Texas in Austin v. Talk, 26 Tex. 127, stated:
"* * * Upon a question of positive fraud, the court will be very slow to disturb the verdict of a jury where the evidence discloses suspicious circumstances of a character to induce the belief that any artifice, concealment or misrepresentation, has been practiced, or that confidence reposed has been abused to the prejudice of the party complaining. * * *"
Under the circumstances of this case, this court will not hasten to disturb the jury's verdict except as we must.
The judgment of the trial court is reformed to fix the sum of actual damages in tort at $766.90 in lieu of the $1,217.88 included therein, and, as reformed, is affirmed.
NOTES
[1] All references to rules are to Texas Rules of Civil Procedure.
[2] The Texas Writs of Error Table shows 348 S.W.2d 639 for the writ history, but the latter is an opinion by the same court holding it did not have jurisdiction to entertain the motion filed to amend its opinion in 342 S.W.2d 117, in which application for writ of error was refused, no reversible error.
[3] The appellate history is recorded in International Security Life Insurance Co. v. Helm, 447 S.W.2d 956 (Tex.Civ.App.iation was more accurately
characterized as a minimal posterior bulge.